JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

ANNASARA G. PURCELL (CSB No. 295512)
apurcell@fenwick.com
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Facsimile: 206.389.451

ARMEN NERCESSIAN (CSB No. 284906)
anercessian@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

Attorneys for AUDIBLE, INC. and AMAZON.COM, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(WESTERN DIVISION – LOS ANGELES)

GRANT MCKEE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

AUDIBLE, INC. and AMAZON.COM, INC.,

Defendants.

Case No.: 2:17-cv-01941 GW(Ex)

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: May 4, 2017
Time: 8:30 AM
Crtm: 9D
Judge: George H. Wu
Trial Date: NONE SET



Case 5:18-cv-00211-D Document 18 Filed 04/05/17 Page 1 of 23

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 2

II. BACKGROUND .......... 2

A. Amazon and Audible's Services .......... 2

B. Amazon and Audible's Terms of Service and Arbitration Provision .......... 4

C. Plaintiff's Agreement to the Arbitration Provisions .......... 5

D. Plaintiff's Claims .......... 7

III. ARGUMENT .......... 9

A. Washington Law Governs the Parties' Agreement and Any Dispute Arising Under the Agreement. .......... 9

B. Plaintiff Repeatedly Accepted and Is Now Bound by the Terms of the Arbitration Agreement. .......... 10

C. The Parties' Arbitration Agreement and Class Waiver Provisions are Enforceable. .......... 12

1. The Agreement's Class Action Waiver is Enforceable. .......... 12

2. The Agreement is Not Unconscionable. .......... 13

D. Plaintiff's Claims are Within the Scope of the Arbitration Provision. .......... 16

IV. CONCLUSION .......... 17

# TABLE OF AUTHORITIES

***Cases*** **Page(s):**

*Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470 (9th Cir. 1988) ..... 1

*Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013) ..... 12, 13

*Ashbey v. Archstone Prop. Mgmt.*, 612 F. App'x 430 (9th Cir. 2015) ..... 16

*AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) ..... 12, 13, 14

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986) ..... 16

*Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 367 P.3d 6 (2016) ..... 15

*Brinkley v. Monterey Fin. Servs., Inc.*, 242 Cal. App. 4th 314, 196 Cal. Rptr. 3d 1 (2015) ..... 14

*Clarium Capital Mgmt. LLC v. Choudhury*, No. 08-5157SBA, 2009 WL 331588 (N.D. Cal. Feb. 11, 2009) ..... 16

*Coneff v. AT&T Corp.*, 673 F.3d 1155 (9th Cir. 2012) ..... 13

*Crook v. Wyndham Vacation Ownership, Inc.*, No. 13-CV-03669-WHO, 2013 WL 11275036 (N.D. Cal. Nov. 8, 2013) ..... 16

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) ..... 12

*Doe v. Project Fair Bid Inc.*, No. C11-809 MJP, 2011 WL 3516073 (W.D. Wash. Aug. 11, 2011) ..... 10

*Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d. 1172 (W.D. Wash. 2014) ..... 11, 13, 15

*Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051 (S.D. Cal. 2015) ..... 10, 11, 13, 15

*Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928 (9th Cir. 2013) ..... 13

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) ..... 10

Fenwick & West LLP
Attorneys at Law
Mountain View

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012) ........ 11

*Gandee v. LDL Freedom Enters., Inc.*,
176 Wash.2d 598 (2013) ........ 15

*Hatfield v. Halifax PLC*,
564 F.3d 1177 (9th Cir. 2009) ........ 9

*Hauenstein v. Softwrap Ltd.*,
No. C07-0572MJP, 2007 WL 2404624
(W.D. Wash. Aug. 17, 2007) ........ 10

*JS Barkats, PLLC v. BE, Inc.*,
12 Civ. 6779 (JFK), 2013 WL 444919 (S.D.N.Y. Feb. 6, 2013) ........ 1

*KPMG LLP v. Cocchi*,
132 S. Ct. 23 (2011) ........ 12

*Lamkin v. Morinda Props. Weight Parcel, LLC*,
440 F. App'x 604 (10th Cir. 2011) ........ 1

*McNamara v. Royal Bank of Scotland Grp., PLC*,
No. 11-cv-2137-L (WVG), 2012 WL 5392181
(S.D. Cal. Nov. 5, 2012) ........ 12

*Mortensen v. Bresnan Commc'ns LLC*,
722 F.3d 1151 (9th Cir. 2013) ........ 12, 13, 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ........ 16

*Nedlloyd Lines B.V. v. Super. Ct.*,
3 Cal.4th 459 (1992) ........ 9

*Peters v. Amazon Servs., LLC*,
2 F. Supp. 3d 1165 (W.D. Wash. 2013) ........ 13, 15

*Rent-A-Center W., Inc. v. Jackson*,
561 U.S. 63 (2010) ........ 14

*Reynolds v. Philip Morris USA, Inc.*,
332 F. App'x 397 (9th Cir. 2009) ........ 8

*Satomi Owners Ass'n v. Satomi, LLC*,
167 Wash.2d 781 (2009) ........ 15

*Selden v. Airbnb, Inc.*,
No. 16-CV-00933 (CRC), 2016 WL 6476934
(D.D.C. Nov. 1, 2016) ........ 11

*Simulados Software, Ltd. V. Photon Infotech Private, Ltd.*,
No. 5:12-CV-04382-EJD, 2014 WL 1728705
(N.D. Cal. May 1, 2014) ........ 9



Case 5:18-cv-00211-D Document 18 Filed 04/05/17 Page 4 of 23

*Starke v. Gilt Groupe, Inc.*,
No. 13 CIV. 5497 LLS, 2014 WL 1652225
(S.D.N.Y. Apr. 24, 2014) .......................................................................... 11

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) ..........................................................11-12

*United States v. Drew*,
259 F.R.D. 449 (C.D. Cal. 2009) ........................................................................ 12


***STATUTES AND RULES:***


9 U.S.C. §§ 1-14 ............................................................................................ 1, 12

Civ. Local Rule 7-3............................................................................................. 1



FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW





Case 5:18-cv-00211-D Document 18 Filed 04/05/17 Page 5 of 23

Case 5:18-cv-00211-D Document 18 Filed 04/05/17 Page 6 of 23



**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on May 4, 2017 at 8:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 9(D) of the U.S. District Court for the Central District of California, located at 350 West First Street, Los Angeles, CA, 90012, Defendants Audible, Inc. (**"Audible"**) and Amazon.com, Inc. (**"Amazon"**) will and hereby do move the Court for an order compelling individual arbitration of Plaintiff Grant McKee's claims and dismissing this action with prejudice. This Motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-14, and upon the grounds that Plaintiff agreed on multiple different occasions to arbitrate his claims when he agreed to Amazon's Conditions of Use.

This Motion is based on this Notice of Motion and Motion, Defendants' Memorandum of Points and Authorities, the Declaration of Jason A. Massello in Support of Defendants' Motion to Compel and all exhibits thereto, all documents in the Court's file, and on such other argument as may be presented to the Court.[1]

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on March 15, 2017.

Dated: April 5, 2017

FENWICK & WEST LLP

By: /s/ *Jedediah Wakefield*
Jedediah Wakefield
Annasara G. Purcell
Armen Nercessian

Attorneys for AUDIBLE, INC. and AMAZON.COM, INC.

---

[1] This motion satisfies Amazon's obligation to respond to Plaintiff's Complaint at this stage. *See Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 F. App'x 604, 607 (10th Cir. 2011); *JS Barkats, PLLC v. BE, Inc.*, 12 Civ. 6779 (JFK), 2013 WL 444919, at *2 (S.D.N.Y. Feb. 6, 2013) ("[P]arties are permitted to file motions to stay in lieu of an answer or other dispositive motions."). Amazon reserves the right to file a Rule 12(b) motion at a later time. *See Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 (9th Cir. 1988).

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In June of 2016, Grant McKee—already a longtime Amazon customer and Amazon Prime member—signed up for an Audible membership, an audiobook service offered by Amazon's wholly owned subsidiary, Audible, Inc. In doing so, Mr. McKee agreed to Amazon's conditions of use for the Audible membership service, as he had many times before with other Amazon services, including when he originally joined Amazon Prime. Those conditions of use have consistently contained an agreement to resolve disputes through binding arbitration on an individual basis. In violation of that agreement, Mr. McKee now seeks to pursue a federal lawsuit against Amazon and Audible on behalf of a nationwide class of Audible subscribers, based on a variety of ill-conceived theories.

Plaintiff's arbitration agreement bars this lawsuit. The Federal Arbitration Act and Supreme Court authority applying it leave no doubt that arbitration provisions like the provision here, including a class action waiver, are valid and enforceable. There is also no reasonable dispute that the claims Plaintiff seeks to assert are within the scope of the arbitration provision, as each claim relates to and arises from Plaintiff's use of Amazon's Audible service. Accordingly, the Court should compel arbitration and dismiss Plaintiff's Complaint in its entirety.

## II. BACKGROUND

### A. Amazon and Audible's Services

Amazon is America's largest e-commerce marketplace. Through the website www.amazon.com, consumers can purchase millions of different goods from both Amazon itself and from third-party vendors. Declaration of Jason A. Massello in Support of Defendants' Motion to Compel Arbitration (**"Massello Decl."**), filed concurrently herewith, at ¶ 2. Amazon provides customers with the option of joining Amazon Prime, which provides members with free shipping, access to

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW



Case 5:18-cv-00211-D Document 18 Filed 04/05/17 Page 7 of 23

movies and television shows, and a host of other benefits, in exchange for an annual or monthly membership fee. *Id.*

Audible, Inc. is an audiobook and spoken audio information and entertainment service that Amazon acquired in 2008. Massello Decl. at ¶ 3. Audible offers more than 250,000 audiobooks that users can listen to through the Audible app on a variety of mobile devices. *Id.* Audible offers a subscription-based service, where subscribers pay a fixed fee, and in turn receive membership benefits, including access to exclusive original audio series, discounts on audiobooks, and membership credits, which they can redeem for audiobooks and other audio content. *Id.* at ¶¶ 3-4, Ex. 1. Each membership credit can be redeemed for one audiobook, regardless of the book's price. *Id.* at ¶ 4. For example, Ron Chernow's *Alexander Hamilton*—inspiration for the popular musical—lists for approximately $42.00, but can be redeemed for one credit. *Id.* Members can also buy audiobooks at discounted prices, without using credits. *Id*. at ¶¶ 3-5, Ex. 1.

The number of audiobooks a member can redeem during the term of memberships using membership credits depends on which Audible plan the user chooses. *See* Massello Decl. at ¶ 4, Ex. 1. Audible also offers its members the flexibility to "roll over" those membership credits into a subsequent membership period, up to a maximum number that varies by membership plan. *See id.* On a platinum annual plan, for example, the user pays an annual fee of $229.50, for which the user receives twenty-four membership credits (redeemable for twenty-four audio books of the user's choosing) in addition to other Audible benefits. *Id.* Subscribers on this plan can "roll over" a maximum of twelve credits annually; if they do not use all of their membership credits in one year, they can roll twelve into the following year. *Id.* On the gold monthly membership (which Plaintiff chose), users pay $14.95 per month and receive one membership credit each month. *Id.* Users who do not redeem their membership credit for a book in a given month can

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

roll the credit over for use in a later month, until they accumulate five rollover credits (at which point membership credits stop accumulating). *Id.* Audible explains the limitations on rolling over membership credits for each plan in the plan description. *Id.*

Because credits are a membership benefit, they are lost if a user cancels his or her membership. The Audible Service Terms of Use clearly state that membership credits "expire immediately upon the termination of your membership." *Id.* at ¶ 6, Ex. 2. Audible therefore advises members that they should use their credits before changing or cancelling their membership. *Id.* at ¶ 7, Ex. 3. The Audible Terms also make clear that membership credits "have no cash value, are non-transferrable, and non-refundable." *Id.* at ¶ 6, Ex. 2.

### B. Amazon and Audible's Terms of Service and Arbitration Provision

Since August 2011, Amazon's Conditions of Use ("COUs") have contained an arbitration agreement with a class action waiver provision. Massello Decl. at ¶ 8, Exs. 4-6. When updating its terms, Amazon also issued a notice to all account holders, including Plaintiff, to inform them of the addition of the arbitration agreement. *Id.* at ¶¶ 8, 14. These arbitration provisions have remained largely unchanged since 2011. *Id* at ¶ 8. The version of the COUs that existed on February 10, 2012, when Plaintiff signed up for Amazon Prime, contain this arbitration provision as well. *See id.* at ¶¶ 8, 14, Ex. 6 at 3-4. Moreover, the Audible Service Terms of Use effective on June 26, 2016, when Plaintiff signed up for an Audible subscription, contained an additional provision stating that any dispute relating to a customer's use of Audible would be resolved through binding arbitration under Amazon's COUs. *See id.* at ¶¶ 13, 15, Ex. 2 at 2.

The arbitration provision of the Amazon COUs provides that all claims relating to the use of any Amazon service must be resolved either in arbitration or

in small claims court:

> **Any dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com will be resolved by binding arbitration, rather than in court,** except that you may assert claims in small claims court if your claims qualify.

Massello Decl. at ¶ 8, Ex. 4 at 4 (bold in original).

The arbitration provision contains a number of provisions ensuring that arbitration is efficient, fair, and accessible to consumers. For example, Amazon pays all arbitration fees and costs for claims under $10,000, which would include Plaintiff's claim here. Massello Decl. at ¶ 8, Ex. 4 at 4. Amazon agrees not to seek attorneys' fees unless the arbitrator finds that a claim is frivolous, and the customer can decide to arbitrate either in the jurisdiction where the customer resides, or to participate by phone or written submission. *Id.*

To keep the arbitration process streamlined and efficient, the agreement also contains a class action waiver: **"We each agree that any dispute resolution proceedings will be conducted on an individual basis and not in a class, consolidated, or representative action."** Massello Decl. at ¶ 8, Ex. 4 at 4 (bold in original).

### C. Plaintiff's Agreement to the Arbitration Provisions

On February 10, 2012, Plaintiff—already a longtime Amazon account holder—signed up for an Amazon Prime membership. Massello Decl. at ¶ 14. During the sign up process, after entering his payment information, Plaintiff was presented with a disclosure reading "By signing up you agree to the Amazon Prime Terms. . . . " *See id.* at ¶ 12, Ex. 11. This disclosure was directly below a button reading "Start your 30-day free trial" that Plaintiff necessarily clicked on to become a Prime member. *See id.* at ¶ 12, Ex. 9. Thus Plaintiff agreed to the arbitration

provision when he first joined Amazon Prime in 2012.[2]

Plaintiff agreed to the arbitration provision each time he placed an order from Amazon's standard checkout page, which—immediately below the "Place your order" button—states "By placing your order, you agree to Amazon's privacy notice and conditions of use." Massello Decl. at ¶ 11, Ex. 8. The words "conditions of use" in that notice are highlighted in blue, and include a hyperlink directly to the conditions of use and the arbitration provision. *Id*. Since 2012, Plaintiff has been presented with this notice every time that he placed an order with his Prime account from Amazon's standard checkout screen. *Id.*

On June 26, 2016, Plaintiff signed up for Audible using his already-existing Amazon Prime account. Massello Decl. at ¶ 15. This means that instead of creating a new username and password for Audible, and having to re-enter payment information, Plaintiff simply used his Amazon Prime username and password to join Audible from his Prime Account. *Id.*

Plaintiff initially signed up for Audible with a 30-day free trial, after which he agreed to pay a monthly charge of $14.95 per month, which he could cancel at any time. Massello Decl. at ¶ 15, Ex. 1. To start this trial, Plaintiff necessarily had to click on a button that read "Start Your Free Trial Now." *Id.* at ¶ 13, Ex. 12. Immediately below this box Plaintiff was presented with a reminder the Audible is an Amazon company, and a notice that "by completing your purchase you agree to Audible's Conditions of Use and Privacy Notice and authorize Audible to charge your designated card or any other card on file." *Id.* The "Conditions of Use" language was highlighted in blue, and hyperlinked to a page with the full text of the conditions of use. *Id.* Those conditions of use, in turn, note that any disputes are governed by the arbitration provision of Amazon's COU. *Id.* In particular, the Audible terms state that: **"Any dispute or claim arising from or relating to these**

[2] Plaintiff remains an Amazon Prime member to this day. Massello Decl. at ¶ 14.



FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Case 5:18-cv-00211-D Document 18 Filed 04/05/17 Page 11 of 23

**Terms or your use of the Service is subject to the binding arbitration, governing law, disclaimer of warranties, limitation of liability and all other terms in the Amazon.com Conditions of Use."** *Id.* at ¶ 13, Ex. 2 at 2 (bold in original). The Audible Service Terms of Use contain a hypertext link to the Amazon COUs as well. *Id.* Plaintiff could not have subscribed to Audible without first clicking the "Start Your Free Trial Now" box after being presented with these disclosures. Thus, by signing up for Audible in June of 2016, Plaintiff once again agreed to the Amazon COUs and to the arbitration provision that they contain.

**D. Plaintiff's Claims**

Plaintiff is a Los Angeles County resident who used the Audible service for six months in 2016. Plaintiff opted to enroll in an Audible Gold Monthly Membership plan, under which he paid $14.95 per month and, in addition to other benefits, he received one membership credit every month. Massello Decl. at ¶ 15; *see also id.* at ¶ 4, Ex. 1. During the six months that he maintained his gold membership, Plaintiff redeemed four membership credits for audiobooks, one of which he received during a 1-month free trial membership. *Id.* at ¶ 15. Plaintiff terminated his membership in December of 2016 while he had two membership credits remaining. *Id*. at ¶ 17. Plaintiff now claims that he "intended to redeem his two remaining prepaid credits as soon as he found a new audiobook that interested him," apparently uninterested in any of the more than 250,000 audiobooks available to him at the time of his cancellation. Dkt. No. 1 (**"Complaint"**) at ¶ 9. Notably, Plaintiff does not dispute that the Audible Service Terms of Use disclose that membership credits are lost once a member cancels a membership. *Id*. at ¶ 73; *cf.* Massello Decl. at ¶¶ 6-7, Exs. 2-3. Nor does he dispute that he could have used the remaining membership credits before terminating his account, and kept the audiobooks after that. *See* Massello Decl at ¶¶ 6-7, Exs. 2-3. Moreover, Mr. McKee did not contact Audible or Amazon customer support at any point to





Case 5:18-cv-00211-D Document 18 Filed 04/05/17 Page 12 of 23

express any dissatisfaction with his Audible service. *Id.* at ¶ 16. Nevertheless, because he lost two Audible membership credits when he terminated his membership before using them, Plaintiff now seeks to represent a nationwide class of Audible users in challenging an array of Audible practices and disclosures.

Plaintiff seeks to assert nine causes of action on behalf of a nationwide class and five separate sub-classes. In addition to overlooking Audible's clear explanation that membership credits expire when users cancel their membership, Plaintiff seeks to assert a host of other misguided claims:

- He claims that Audible wrongly limits users to a maximum number of credits, even though (1) these limits are obvious in the advertising for the various plans, which are explicitly priced based on rollover limits, and (2) Plaintiff redeemed credits and never hit the rollover limit for his plan. *See* Massello Decl. at ¶¶ 4, 6-7, 15, Exs. 1-3.
- He wrongly asserts that membership credits are illegally expiring "gift cards" or "gift certificates," even though gift card laws do not apply to membership benefits—like Audible credits—with no fixed value. *See* *Reynolds v. Philip Morris USA, Inc.*, 332 F. App'x 397, 398 (9th Cir. 2009) (reward points under loyalty program did not constitute a "gift certificate" because they lacked an indicated cash value) (unpublished disposition); *see also* Massello Decl. at ¶ 4.
- Plaintiff complains that if a user's primary credit card is declined, Audible will charge another credit card on the user's account, even though (1) Audible provides clear notice of this practice immediately below the initial sign-up button, and in its Terms of Use, and (2) Plaintiff does not claim that Amazon ever charged the "wrong credit card" on his account. *See* Complaint at ¶¶ 94-98; *cf.* Massello Decl. at ¶¶ 6, 13, Exs. 2, 4, 12.

The common thread tying together these implausible claims is that they all

arise out of and relate to Plaintiff's use of the Audible. Accordingly, each claim falls squarely within the arbitration provision.

## III. ARGUMENT

Plaintiff should be compelled to arbitrate his claims regarding the Audible service because he agreed to the arbitration provision multiple times over the course his years as an Amazon customer, because Amazon's arbitration agreement is valid and enforceable, and because the claims that Plaintiff seeks to assert here plainly fall within the scope of the agreement.

### A. Washington Law Governs the Parties' Agreement and Any Dispute Arising Under the Agreement.

The Amazon COUs provide that "the laws of the state of Washington, without regard to principles of conflict of laws, will govern these Conditions of Use and any dispute of any sort that might arise between you and Amazon." Massello Decl. at ¶ 9, Ex. 4 at 4. In deciding whether to enforce a contractual choice of law provision, California courts apply the principles of the Restatement (Second) of Conflict of Laws. *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal.4th 459 (1992). These principles strongly favor enforcement of the parties' choice of law provision, and require courts to honor the parties' choice so long as the chosen state bears a "substantial relationship to the parties or their transaction" and enforcement of the provision does not violate a "fundamental policy [of California]." *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009). Both conditions are satisfied here.

First, Amazon's principal place of business is in Washington, which is sufficient to satisfy the "substantial relationship" standard. *See Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*, No. 5:12-CV-04382-EJD, 2014 WL 1728705, at *3, (N.D. Cal. May 1, 2014) (collecting cases holding that a party has a "substantial relationship" to its state of domicile or incorporation). Second,

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW



Case 5:18-cv-00211-D Document 18 Filed 04/05/17 Page 14 of 23

application of Washington law does not violate a fundamental policy of California. As the District Court for the Southern District of California recently concluded, Washington consumer protection laws are at least as protective of consumer rights as California's laws. *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1063–64 (S.D. Cal. 2015) (noting that "[i]f the two state's laws are not equally protective of consumers, and equally hostile to unconscionable terms in consumer contracts, they are certainly close," and that "a plausible case can be made that Washington's unconscionability doctrine is *more* protective of consumers than California's") (emphasis in original). Therefore any California policy in place to protect consumer rights is not undermined by the application of Washington law.

### B. Plaintiff Repeatedly Accepted and Is Now Bound by the Terms of the Arbitration Agreement.

In determining whether parties agreed to arbitrate, "courts . . . apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under Washington law, "clickwrap" and "sign-up wrap" agreements, wherein a consumer is informed that clicking a button constitutes assent to an agreement and proceeds to click the button, are fully enforceable. *See, e.g., Doe v. Project Fair Bid Inc.*, No. C11-809 MJP, 2011 WL 3516073, at *4 (W.D. Wash. Aug. 11, 2011) ("This kind of 'clickwrap' agreement has been upheld in several cases in this circuit and elsewhere."); *Hauenstein v. Softwrap Ltd.*, No. C07-0572MJP, 2007 WL 2404624, at *2-3, 6 (W.D. Wash. Aug. 17, 2007) (enforcing arbitration agreement because plaintiff "manifested his assent to the License Agreement by 'clicking' the appropriate box").

Courts have noted specifically that when a hyperlink to terms of use is provided in close proximity to a "purchase" or "sign in" button, and the user is informed that purchasing or signing in constitutes acceptance of those terms, the

user does in fact provide assent to the terms by proceeding to click the "purchase" or "sign-in" button. *See Selden v. Airbnb, Inc.*, No. 16-CV-00933 (CRC), 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016) (finding that user was bound by an arbitration clause through a "sign-in wrap" agreement) (collecting cases); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012) (enforcing forum selection clause based on disclosure below "Sign Up" button); *Starke v. Gilt Groupe, Inc.*, No. 13 CIV. 5497 LLS, 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (enforcing arbitration clause, noting that plaintiff "was directed exactly where to click in order to review those terms, and his decision to click the 'Shop Now' button represents his assent to them").

Under this standard, Plaintiff assented to Amazon's arbitration provision several different times. When he first signed up for Amazon Prime in 2012, Plaintiff was told that "By signing up you agree to the Amazon Prime Terms. . . . " Massello Decl. at ¶ 12, Ex. 11. This alone would be sufficient to manifest assent. When he signed up for Audible four years later, Plaintiff was again told "[b]y completing your purchase you agree to Audible's Conditions of Use. . . . " *Id.* at ¶ 13, Ex. 12. Plaintiff chose to proceed, again manifesting assent to be bound by Amazon's COUs, including its arbitration and choice-of-law provisions.

Multiple courts have applied Washington law to find that the making of any purchase on Amazon's website constitutes agreement to the arbitration provision. *See Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d. 1172, 1175-78 (W.D. Wash. 2014); *Fagerstrom*, 141 F. Supp. 3d at 1057-60 (same). Plaintiff's agreement to the arbitration provision when using the Amazon and Audible websites over the course of several years undoubtedly constitutes assent under these principles.[3]

---

[3] If the Court were to apply California law to this question—which it should not in light of the choice of law provision—the outcome would be the same as California courts also routinely enforce clickwrap and sign-up wrap agreements. *See, e.g., Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911-12 (N.D. Cal. 2011) ("Because Plaintiff was provided with an opportunity to review the terms of service

### C. The Parties' Arbitration Agreement and Class Waiver Provisions are Enforceable.

The Federal Arbitration Act (FAA) makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act reflects an "emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25 (2011) (per curiam) (internal quotation marks omitted). The Ninth Circuit has concluded that "the FAA's purpose is to give *preference* (instead of mere equality) to arbitration provisions." *Mortensen v. Bresnan Commc'ns LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013) (emphasis added). As such, when the claim a plaintiff asserts falls within the scope of a valid arbitration provision, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration.'" *McNamara v. Royal Bank of Scotland Grp., PLC*, No. 11-cv-2137-L (WVG), 2012 WL 5392181, at *3 (S.D. Cal. Nov. 5, 2012) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in *Dean Witter*).

#### 1. The Agreement's Class Action Waiver is Enforceable.

Since the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), it has been well-settled that the inclusion of a class action waiver does not invalidate an arbitration provision, regardless of any state law to the contrary. Instead, class action waivers—and arbitration agreements containing such waivers—are valid and enforceable. *Concepcion*, 131 S. Ct. at 1753; *see also Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (upholding class action waiver and noting that Rule 23 does not "establish an entitlement to

in the form of a hyperlink immediately under the 'I accept' button . . . a binding contract was created here."); *United States v. Drew*, 259 F.R.D. 449, 462 n.22 (C.D. Cal. 2009) (collecting cases and noting that "clickwrap agreements 'have been routinely upheld'").


Case 5:18-cv-00211-D Document 18 Filed 04/05/17 Page 17 of 23

class proceedings for the vindication of statutory rights”).

Since *Concepcion*, the Ninth Circuit has uniformly recognized that state laws purporting to invalidate arbitration provisions in the name of consumer rights are preempted by the FAA. *See Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 934-36 (9th Cir. 2013) (holding that that under *Concepion* and *Italian Colors*, the FAA preempted a California rule that invalidated agreements to arbitrate representative claims for public injunctive relief); *see also Mortensen*, 722 F.3d at 1159-60, (“[T]he FAA’s command to enforce arbitration agreements trumps any interest in ensuring the prosecution of low-value claims.”). Most critically here, in *Coneff v. AT&T Corp.*, the Ninth Circuit held that a Washington statute invalidating class action waivers—which closely resembled the California statute considered by the Supreme Court in *Concepcion*—was similarly preempted and that the arbitration provision at issue was thus valid and enforceable. 673 F.3d 1155, 1158 (9th Cir. 2012).

The arbitration provision at issue here—requiring submission of claims to binding arbitration with a class action waiver—is not meaningfully distinguishable from those considered and found enforceable in these cases. Applying this line of cases to Amazon’s arbitration provision, courts all across the country have found the provision, and the class action waiver it contains, to be valid and enforceable. *See Ekin,* 84 F. Supp. 3d. at 1175 (enforcing Amazon’s arbitration provision and compelling arbitration); *Fagerstrom,* 141 F. Supp. 3d at 1057-60, 1064-76 (same); *Peters v. Amazon Servs., LLC*, 2 F. Supp. 3d 1165, 1168-69, 1170 (W.D. Wash. 2013) (same).

**2. The Agreement is Not Unconscionable.**

When a Plaintiff attempts to avoid arbitration by asserting that the arbitration provision at issue is unconscionable, he bears the burden of putting forth facts showing unconscionability. *Mortensen*, 722 F.3d at 1157 (“As arbitration is



FENWICK & WEST LLP ATTORNEYS AT LAW MOUNTAIN VIEW

favored, those parties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable."). The argument that other provisions of a contract are unconscionable will not void an agreement to arbitrate. *See Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 70-71 (2010) ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."). The parties' agreement here is neither procedurally nor substantively unconscionable.

Turning first to procedural unconscionability, under Washington law, "procedural unconscionability refers to the lack of meaningful choice," including "the manner in which the contract was entered, whether each party had a reasonable opportunity to understand the terms of the contract, and whether the important terms were hidden in fine print." *Brinkley v. Monterey Fin. Servs., Inc.*, 242 Cal. App. 4th 314, 336, 196 Cal. Rptr. 3d 1 (2015) (applying Washington law). The fact that a consumer contract is a contract of adhesion does not render it procedurally unconscionable. *See Concepcion*, 563 U.S. at 346-47 (enforcing arbitration provision in an adhesion contract, noting "the times in which consumer contracts were anything other than adhesive are long past.").

Here Plaintiff had a meaningful opportunity to understand the terms of the contract, since Amazon presented the terms to him before he joined Amazon Prime, before he joined Audible, and every time he made a purchase on Amazon or redeemed an Audible credit through the Amazon checkout page. Massello Decl. at ¶¶ 8-15, Exs. 2, 4-11. Plaintiff cannot credibly argue that the important terms are in "fine print," as Amazon shows that the arbitration provision is in bold text, so as to stand out from the rest of Amazon's COUs. *See id.* at ¶ 8, Ex. 4 at 4. Similarly, in the Audible Service Terms of Use, the reference to Amazon's arbitration provision is in bold, and the section header entitled "DISPUTES" is the only header appearing in all caps. *Id*. at ¶ 13, Ex. 2 at 2. Far from burying the arbitration

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW



Case 5:18-cv-00211-D Document 18 Filed 04/05/17 Page 19 of 23

provisions in fine print, Defendants specifically emphasized these terms within their terms of service.[4]

The agreement is also not substantively unconscionable. "A term is substantively unconscionable where it is one-sided or overly harsh, shocking to the conscience, monstrously harsh, or exceedingly calloused." *Gandee v. LDL Freedom Enters., Inc.*, 176 Wash.2d 598, 603 (2013) (internal citations and punctuation omitted). Amazon's arbitration provision is none of these things. On the contrary, the arbitration agreement contains a number of provisions designed to make arbitration accessible and fair to consumers: it provides that Amazon will pay all arbitration fees for claims less than $10,000, and provides that the consumer may choose whether to arbitrate in their home jurisdiction, or exclusively by phone appearances and written submissions. *See id.* at ¶ 8, Ex. 4 at 4. If anything, these make arbitration more accessible than relief from the courts, where customers might be required to pay their own fees (which could eclipse the amount of relief sought for smaller claims) and would also be required to make personal appearances or retain counsel.

In light of these even-handed terms, Court have routinely rejected the argument that Amazon's arbitration provision is unconscionable. *See Ekin,* 84 F. Supp. 3d. at 78 (finding that Amazon's arbitration provision was not unconscionable); *Fagerstrom*, 141 F. Supp. 3d at 1064-76 (same); *Peters*, 2 F. Supp. 3d at 1170 (same).[5]

---

[4] Some plaintiffs have argued that it is procedurally unconscionable to incorporate AAA Rules into an agreement by reference without attaching them to the agreement, as Amazon does, but courts have consistently rejected this argument. *See Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 367 P.3d 6 (2016) (holding that incorporation of AAA rules into agreement without attaching a copy did not render agreement procedurally unconscionable); *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wash.2d 781, 801 (2009) (same).

[5] While Amazon's COUs provide that Amazon retains the right to change those terms in the future, courts have held that this language does not provide the basis for an unconscionability challenge unless the party seeking to avoid arbitration



FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

### D. Plaintiff's Claims are Within the Scope of the Arbitration Provision.

Once a court recognizes a valid arbitration agreement, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). In other words, courts should compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute[.]" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). The standard is even lower if the parties have agreed that the arbitrator should decide issues of arbitrability; in that case then the court should refer the matter to arbitration unless the assertion of arbitrability is "wholly groundless." *Clarium Capital Mgmt. LLC v. Choudhury*, No. 08-5157SBA, 2009 WL 331588, at *5 (N.D. Cal. Feb. 11, 2009). When an arbitration agreement incorporates the rules of the American Arbitration Association by reference, this provides "clear and unmistakable evidence" that the parties intended for the arbitrator to decide threshold issues of arbitrability. *See Crook v. Wyndham Vacation Ownership, Inc.*, No. 13-CV-03669-WHO, 2013 WL 11275036, at *5 (N.D. Cal. Nov. 8, 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability").

Here, the arbitration agreement is phrased to cover a broad range of disputes: the Audible Service Terms of Use provide: "Any dispute or claim *arising from or relating to* these Terms *or your use of the Service* is subject to the binding arbitration, governing law, disclaimer of warranties, limitation of liability and all

---

alleges that the other party has in fact unreasonably changed the terms. *See Ashbey v. Archstone Prop. Mgmt.*, 612 F. App'x 430, 432 (9th Cir. 2015). Plaintiff makes no such allegation here, and could not do so, as the arbitration provision has remained substantively unchanged since its introduction in 2011.



Fenwick & West LLP
Attorneys at Law
Mountain View

Case 5:18-cv-00211-D Document 18 Filed 04/05/17 Page 21 of 23

other terms in the Amazon.com Conditions of Use." Massello Decl. at ¶ 13, Ex. 2 at 2 (emphasis added). The Amazon arbitration provision, in turn, covers "[a]ny dispute or claim *relating in any way to your use of any Amazon Service*, or to any products or services sold or distributed by Amazon or through Amazon.com." *See id.* at ¶ 8, Ex. 4 at 4 (emphasis added). Each of these provisions makes clear that any dispute relating to the use of Amazon's Audible service, or to any of the terms governing the use of Audible, falls within the scope of the arbitration provision.

Plaintiff's claims here plainly relate to his use of Amazon's Audible service, and thus are within the scope of the arbitration provision. The gravamen of Plaintiff's complaint is that he did not understand at the time he joined Audible that his membership credits were just that—a membership benefit that would expire when he terminated his membership. *See* Complaint at ¶¶ 10-11. This confusion regarding the terms of his membership clearly relates to Plaintiff's use of Audible, as do Plaintiff's remaining complaints regarding Audible's charging of credit cards and Audible's policy of allowing customers to accrue only a fixed number of membership credits under their various membership plans. None of Plaintiff's claims arise from anything other than his use of the service. For that reason, Plaintiff's claims fall squarely within the scope of the arbitration provision.

## IV. CONCLUSION

Over the course of his long relationship with Amazon, Plaintiff has repeatedly agreed to arbitrate any claim relating to his use of Amazon or Audible on an individual basis. Plaintiff's lawsuit breaches that agreement, and the Court should compel arbitration. Accordingly, Defendants ask this Court to compel these claims to arbitration and dismiss them with prejudice.





Case 5:18-cv-00211-D Document 18 Filed 04/05/17 Page 22 of 23

Dated: April 5, 2017

FENWICK & WEST LLP

By: /s/ *Jedediah Wakefield*
Jedediah Wakefield
Annasara G. Purcell
Armen Nercessian

Attorneys for AUDIBLE, INC. and AMAZON.COM, INC.



FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Case 5:18-cv-00211-D Document 18 Filed 04/05/17 Page 23 of 23