IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-00211-D

TAYLOR FISSE and BRYAN REES, individually
and on behalf of all others similarly situated,     )
                                                     )
                                                     )
                        Plaintiffs,                  )
                                                     )
            v.                                       )
                                                     )
AUDIBLE, INC.,                                       )
                                                     )
                        Defendant.                   )
_____      )

**MEMORANDUM IN SUPPORT OF
DEFENDANT AUDIBLE, INC.'S
MOTION TO COMPEL
ARBITRATION
9 U.S.C. §§ 1-14**

# TABLE OF CONTENTS

PAGE

INTRODUCTION ...................................................................................................1

1. BACKGROUND.............................................................................................2

    A. The Audible Service ..................................................................................2

    B. Procedural History ....................................................................................3

    C. Plaintiffs Repeatedly Agreed to Arbitrate Their Claims............................5

ARGUMENT .......................................................................................................7

1. Plaintiffs Repeatedly Agreed to Binding Arbitration Agreements that Govern This Dispute. .........................................................................................8

    A. November 15, 2015 Sign-up for Audible Free Trial Membership .............9

    B. April 14, 2017 Sign-up for Audible Direct Paid Membership...................12

    C. April 14, 2017 Credit Redemptions on Audible Desktop Website...........13

    D. July 21, 2017 Sign-up for Audible on the Amazon Mobile App..............15

    E. Fisse and Rees's Agreements to Amazon's Terms During Purchases on Amazon.com ...............................................................................................17

    F. December 13, 2013 Sign-up for Amazon Prime.......................................20

2. Plaintiffs' Claims in This Case Fall Within the Scope of Both the Audible and Amazon Arbitration Provisions.............................................................20

    A. The Plain Language of Plaintiffs' Agreements to Arbitrate Covers This Dispute. .....................................................................................................21

    B. Equitable Estoppel Also Requires Arbitration of The Claims in This Lawsuit......................................................................................................23

3. The Arbitration Agreements and Class Action Waivers are Enforceable..............26

    A. The Agreements' Class Action Waiver is Enforceable. ...........................27

    B. The Agreement is Not Unconscionable. ...................................................28

CONCLUSION ....................................................................................................30

# TABLE OF AUTHORITIES

**CASES**                                                                       **PAGE(S)**

*Alaska Protein Recovery, LLC v. Puretek Corp.*,
No. C13-1429, 2014 WL 2011235 (W.D. Wash. May 16, 2014)..........................................25

*Allen v. Lloyd's of London*,
94 F.3d 923 (4th Cir. 1996) ...............................................................24

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)...........................................................................27

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009) ...........................................................................24

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011).................................................................. *passim*

*AT&T Techs, Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)...........................................................................20

*Baltazar v. Forever 21, Inc.*,
62 Cal. 4th 1237, 367 P.3d 6 (2016) ................................................29

*Bergenstock v. LegalZoom.com, Inc.*,
No. 13 CVS 15686, 2015 WL 3866703 (N.C. Super. June 23, 2015)....................................8

*Brinkley v. Monterey Fin. Servs., Inc.*,
242 Cal. App. 4th 314, 196 Cal. Rptr. 3d 1 (2015).....................................29

*Brock v. Entre Computer Centers, Inc.*,
933 F.2d 1253 (4th Cir. 1991) .........................................................24

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)...........................................................................11

*Chorley Enter., Inc. v. Dickey's Barbecue Restaurants, Inc.*,
807 F.3d 553 (4th Cir. 2015) .............................................................2

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)...........................................................................27

*DIRECTV, Inc. v. Imburgia*,
577 U.S.___, 136 S. Ct. 463 (2015)...................................................11

*Drews Distrib., Inc. v. Silicon Gaming, Inc.*,
245 F.3d 347 (4th Cir. 2001) ...........................................................22

# TABLE OF AUTHORITIES
## (CONTINUED)

CASES                                                                 PAGE(S)

*E. W. Bank v. Bingham*,
    992 F. Supp. 2d 1130 (W.D. Wash. 2014)........................................................24, 25

*Ekin v. Amazon Servs., LLC*,
    84 F. Supp. 3d 1172 (W.D. Wash. 2014)..................................................... *passim*

*Eric Weber v. Amazon.com, Inc.*,
    Case No. 2:17-cv-08868-GW-E (C.D. Cal.)..................................................5, 26

*Erichsen v. RBC Capital Markets, LLC*,
    883 F. Supp. 2d 562 (E.D.N.C. 2012)................................................................2

*Fagerstrom v. Amazon.com, Inc.*,
    141 F. Supp. 3d 1051 (S.D. Cal. 2015)..................................................27, 28, 30

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995).......................................................................................8

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012)............................................................11

*Gandee v. LDL Freedom Enters., Inc.*,
    176 Wash. 2d 598 (2013)..............................................................................29

*Green Tree Fin. Corp.-Alabama v. Randolph*,
    531 U.S. 79 (2000).......................................................................................28

*Hightower v. GMRI, Inc.*,
    272 F.3d 239 (4th Cir. 2001) .........................................................................7

*Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*,
    206 F.3d 411 (4th Cir. 2000) .......................................................................23

*J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*,
    863 F.2d 315 (4th Cir. 1988) .......................................................................23

*James C. Greene Co. v. Great Am. E & S Ins. Co.*,
    321 F. Supp. 2d 717 (E.D.N.C. 2004).......................................................20, 21

*JS Barkats, PLLC v. BE, Inc.*,
    12 Civ. 6779 (JFK), 2013 WL 444919 (S.D.N.Y. Feb. 6, 2013)...........................2

CASES                                                                     PAGE(S)

*Kindred Nursing Centers Ltd. P'ship v. Clark*,
581 U.S.__, 137 S. Ct. 1421 (2017)................................................................11

*King v. Bryant*,
225 N.C. App. 340, 737 S.E.2d 802 (2013)...................................................21

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011)........................................................................................27

*Lamkin v. Morinda Props. Weight Parcel, LLC*,
440 F. App'x 604 (10th Cir. 2011) ...............................................................2

*Levin v. Alms & Assocs., Inc.*,
634 F.3d 260 (4th Cir. 2011) .......................................................................22

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
713 F. Supp. 2d 527 (W.D.N.C. 2010) .........................................................24

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)........................................................................9, 19

*Mortensen v. Bresnan Commc'ns, LLC.*,
722 F.3d 1151 (9th Cir. 2013) .....................................................................28

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)..........................................................................................21

*MS Dealer Serv. Corp. v. Franklin*,
177 F.3d 942 (11th Cir. 1999) .....................................................................24

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016).....................................................................18, 19

*Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*,
867 F.2d 809 (4th Cir. 1989) ....................................................................20, 21

*Peters v. Amazon Servs., LLC*,
2 F. Supp. 3d 1165 (W.D. Wash. 2013)...........................................22, 27, 28, 30

*Plazza v. Airbnb, Inc.*,
289 F. Supp. 3d 537 (S.D.N.Y. 2018)..............................................................8

**CASES**                                                                                                   **PAGE(S)**

*Rent-A-Center W., Inc. v. Jackson,*
    561 U.S. 63 (2010) ..................................................................................................28

*Sam Reisfeld & Son Import Company v. S.A. Eteco,*
    530 F.2d 679 (5th Cir. 1976) ...............................................................................24

*Satomi Owners Ass'n v. Satomi, LLC,*
    167 Wash. 2d 781 (2009) .....................................................................................29

*Selden v. Airbnb, Inc.,*
    No. 16-CV-00933 (CRC), 2016 WL 6476934 (D.D.C. Nov. 1, 2016) ........8, 11, 16

*Singh v. Interactive Brokers LLC,*
    219 F. Supp. 3d 549 (E.D. Va. 2016) ....................................................................7

*Starke v. Gilt Groupe, Inc.,*
    No. 13 CIV. 5497 LLS, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014)..................11

*Townsend v. Quadrant Corp.,*
    153 Wash. App. 870 (2009).................................................................................25

*Wiese v. Cach, LLC,*
    189 Wash. App. 466 (2015).................................................................................25

*Wiseley v. Amazon.com, Inc.,*
    709 F. App'x 862 (9th Cir. 2017) ...............................................................18, 26

*Workalemahu v. Heritage Club,*
    No. 14-CV-02396-RM-MEH, 2015 WL 293261 (D. Colo. Jan. 21, 2015)............2

**STATUTES**

Federal Arbitration Act, 9 U.S.C. §§ 1-14 ........................................................ *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b) ...............................................................................................2, 19

Fed. R. Civ. P. 23 .......................................................................................................27

Pursuant to Rules 7.1(d) and 7.2 of the Court's Local Civil Rules, defendant Audible, Inc. respectfully submits this memorandum in support of its motion to compel arbitration.

## INTRODUCTION

This case centers on a couple who share an Amazon account, and an allegedly unauthorized—and promptly refunded—charge to a payment card on file with that account. Plaintiff Taylor Fisse is the Amazon account holder. Plaintiff Bryan Rees is her boyfriend, and he added his payment card to Fisse's Amazon account. In July of 2017, Fisse used that Amazon account—as she had several times in the past—to sign up for a free trial membership with Audible, an Amazon subsidiary that provides audiobooks. When Plaintiffs discovered a charge for the Audible service on Rees's card, Fisse contacted Audible customer support to ask why that card, rather than another card on her account, had been charged, and Audible promptly refunded the charges. Plaintiff Fisse cancelled her Audible membership, and Plaintiffs' lawsuit followed.

Over the years, and over the course of hundreds of purchases on Amazon.com, Fisse and Rees have repeatedly accepted terms of service containing arbitration agreements. Fisse repeatedly agreed to both Amazon's and Audible's terms, both of which require arbitration of the claims she asserts here. Rees never signed up for Audible, but his agreement with Amazon also requires arbitration of his claims. Moreover, his claims are so closely intertwined with Fisse's claims against Audible, and his own claims against Amazon, that principles of equitable estoppel compel the Court to order the entire lawsuit to binding arbitration.

The Federal Arbitration Act and Supreme Court authority applying it leave no doubt that arbitration provisions like those contained in both the Amazon and Audible terms, including class action waivers, are valid and enforceable. The claims Plaintiffs seek to assert here fall within the scope of those agreements, as each claim relates to Plaintiffs' uses of Amazon and its

1

subsidiary Audible's services.  Accordingly, Audible respectfully asks the Court to grant this motion, compel the case to arbitration, and dismiss the Third Amended Complaint in its entirety.

## 1.    BACKGROUND

### A.    The Audible Service

Audible is an audiobook and spoken audio information and entertainment service that Amazon acquired in 2008.  Dkt. 129, Declaration of Gregg Bryan ("Bryan Decl."), ¶¶ 2, 4.[1]  Its customers can purchase one of over 250,000 Audible audiobooks through the Audible online storefront (at www.audible.com), through the Amazon desktop and mobile websites, or using a number of other devices.  *Id.* ¶ 2.  Audible also offers membership services, which are available on a monthly or annual subscription basis.  *Id.*  With an Audible membership, a member pays a monthly or annual fee, which depends on the plan the customer chooses, and in exchange the customer receives a number of benefits.  *Id.*  These benefits include a 30% discount off the regular price of audiobooks; unlimited listening to Audible Channels (an on-demand audio entertainment service that offers original audio series and curated playlists); a complimentary subscription to the digital audio digest of *The Wall Street Journal* or *The New York Times*; and the Great Listen Guarantee, which allows members who are not fully satisfied with an audiobook

---

[1] In a motion to compel arbitration, as opposed to a Rule 12(b)(6) motion, the Court must consider evidence outside the pleadings, including declarations and evidence subject to judicial notice.  *E.g.*, *Erichsen v. RBC Capital Markets, LLC*, 883 F. Supp. 2d 562, 567-68, 575 (E.D.N.C. 2012).  The standard that applies to a motion to compel arbitration "is akin to the burden on summary judgment."  *Chorley Enter., Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 564 (4th Cir. 2015).  This motion satisfies Audible's obligation to respond to Plaintiffs' Third Amended Complaint at this stage.  *Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 F. App'x 604, 607 (10th Cir. 2011); *see also JS Barkats, PLLC v. BE, Inc.*, No. 12 Civ. 6779 (JFK), 2013 WL 444919, at *2 (S.D.N.Y. Feb. 6, 2013) ("[P]arties are permitted to file motions to stay in lieu of an answer or other dispositive motions."); *accord Workalemahu v. Heritage Club*, No. 14-CV-02396-RM-MEH, 2015 WL 293261, at *2 & n.2 (D. Colo. Jan. 21, 2015).  Audible reserves the right to file a Rule 12(b) motion at a later time.

to return or exchange it within 365 days of the original date of purchase. *Id.*

As a benefit of Audible membership, members may select one or more books each month or year (depending on their plan) at no additional cost while their membership is active. *Id.* ¶ 3. Audible provides customers with "credits" that they may redeem for audiobooks. The number of membership credits a customer receives each month or year varies by plan type. *Id.*; *see also id.*, Ex. A. For instance, customers who subscribe to Audible's Gold Monthly plan receive one membership credit each month while their memberships are active. One membership credit may be redeemed for one audiobook, regardless of the price of the book. *Id.* ¶ 3. Once a customer redeems a membership credit for an audiobook, the customer can keep the audiobook—even if the customer subsequently cancels his or her membership. *Id.* Like other membership benefits, however, credits are lost when an Audible subscriber cancels his or her membership. *Id.*

### B. Procedural History

This litigation started when Plaintiff Grant McKee filed a putative class action in the Central District of California on March 10, 2017 against both Audible and Amazon. Dkt. 1. Audible and Amazon both moved to compel arbitration. Dkt. 18. The Court granted Amazon's motion and dismissed all claims against Amazon, but denied the motion as to Audible. Dkt. 37. After undertaking what the Court described as a "massive examination which focuses on the way in which persons come into contact with these terms and conditions," the Court concluded that the particular mobile webpages and user flows that McKee encountered had not put him on adequate notice of the Conditions of Use to find that he had assented to their terms. *See* July 13, 2017 Hearing Transcript at 16; Dkt. 37.

Shortly after the Court's ruling, Plaintiff filed an Amended Complaint adding Seth Beals as a named Plaintiff. Dkt. 40. Audible moved to compel arbitration as to Beals, and moved to dismiss McKee's claims for failure to state a claim and for lack of standing. *See* Dkts. 41 and

42.  After engaging in another intensive analysis of the various webpages that Beals interacted with in April and May of 2015, the Court found that these pages *had* put Beals on adequate notice of Audible's terms and that Beals had agreed to binding arbitration.  Dkt. 53 (tentative ruling as to Beals) at 13-14; *see also* Dkt. 61 (adopting tentative ruling as final decision).  In particular, the Court found that the screen Beals interacted with when redeeming Audible membership credits created assent to Audible's terms.  Dkt, 53 at 13-14.  The Court also concluded that the binding arbitration provision was enforceable, with the exception of one limitation of liability provision that the Court deemed unconscionable, but could sever "without disturbing the rest of the agreement."  Dkt. 37 at 21; *accord* Dkt. 53 at 15.  Accordingly, the Court compelled the bulk of Beals' claims to binding arbitration, and transferred a small subset of claims relating to a gift membership to the United States District Court in the Southern District of New York pursuant to a choice of venue clause in Audible's separate Gift Membership Terms (which are not at issue here).  *See* Dkt. 62.

The Court also dismissed a number of McKee's claims, including for lack of Article III standing.  *See* Dkt. 53 (ruling as to McKee).  Among other things, the Court found that McKee lacked standing to assert claims based on the practice of charging other credit cards on file with customer accounts, because McKee had never had the "non-designated credit card" charged.  *Id.* at 10. For this reason, Fisse and Rees's claims here relating the Rees's credit card were not part of the California case, because the claims they now raise concerning charges to unauthorized payment cards were not properly asserted by any named plaintiff with standing.  As discussed below, the California court also lacked personal jurisdiction over their claims.

Following the dismissal and transfer of Beals' claims, on December 15, 2018, McKee filed a Second Amended Complaint, this time joined by four new plaintiffs:  Fisse and Rees, in

addition to Eric Weber and Michael Rogawski. Dkt. 65. Audible successfully moved to dismiss Fisse and Rees—both North Carolina residents—for lack of personal jurisdiction. Dkt. 94 (tentative ruling) at 8-20*; see* also Dkt. 111 (transfer order). Audible moved to dismiss Rogawski, Dkt. 73, and the court tentatively ruled that Rogawski's claim should be ordered to arbitration, based on his September 30, 2015 redemption of a membership credit on the Amazon.com desktop website, Dkt. 97 at 18-20. The court denied Audible's motion to compel as to Weber, Dkt. 97 at 19-21, and Audible has appealed from that ruling, Dkt. 107.

Plaintiff Rees has separately filed a lawsuit against Audible's parent company, Amazon, in the Central District of California, based on the same facts at issue here. *See Eric Weber v. Amazon.com, Inc.*, Case No. 2:17-cv-08868-GW-E (C.D. Cal.), Dkt. 1.[2] As with the related *McKee* action, that case is also before Judge George Wu. As Audible did earlier in this case, Amazon has filed a motion to dismiss for lack of personal jurisdiction as to Rees. *Weber*, Case No. 2:17-cv-08868-GW-E, at Dkt. 27. Judge Wu has taken the motion under submission, but has deferred a decision on it until resolution of a motion to compel arbitration as to the other named plaintiff, Eric Weber. *See Weber*, Case No. 2:17-cv-08868-GW-E, at Dkts. 35, 42.

### C.    Plaintiffs Repeatedly Agreed to Arbitrate Their Claims.

Plaintiffs' claims in this case are inextricably intertwined, and arise from Rees's use of Fisse's Amazon account, and Fisse's use of that Amazon account to sign up for Audible. *See* Dkt. 123, Third Amended Complaint ("TAC") ¶¶ 5-9. The gravamen of their complaint is that Audible, an Amazon company, charged a payment card held by Fisse's boyfriend, Bryan Rees, which Rees had placed on Fisse's Amazon account. *Id.* ¶¶ 8-9, 13. Fisse additionally alleges

---

[2] Audible attaches the full docket for the *Weber* case as of the date of this filing as **Exhibit A** to this memorandum.

that she was harmed because she lost an Audible membership credit that she failed to redeem before she cancelled her membership.[3]  *Id.* ¶ 9.

Fisse is a longtime Audible customer who has signed up for, and later cancelled, Audible memberships multiple times.  *See* Bryan Decl. ¶ 6, Ex. B; *cf.* TAC ¶ 7 ("Over the next few years, Fisse purchased and redeemed credits on occasion and cancelled and reinstated her membership several times.").  Indeed, Fisse has signed up for Audible memberships no fewer than four separate times, and she has enjoyed a number of membership benefits over the years—including but not limited to six free audiobooks through free trials and other promotions.  *See* Bryan Decl. ¶¶ 6-10, Ex. B.  Along the way, she has also agreed to Audible's Conditions of Use no fewer than five times.  *See* Dkt. 131, Declaration of Kausik Basu ("Basu Decl."), ¶¶ 2-7, Exs. A-F; Dkt. 132, Declaration of Erin Murphy ("Murphy Decl."), ¶¶ 2-5, Exs. A-D.  Those Audible Service Conditions of Use contain arbitration agreements with class action waiver provisions that bar this lawsuit.  *See* Dkt. 130, Declaration of Jason Massello ("Massello Decl."), ¶¶ 2-10, Exs. A-E.

Plaintiffs have also been active customers of Amazon, Audible's parent company. Between November 1, 2011 and September 29, 2017, Plaintiff Fisse placed a total of 198 retail purchase orders for 261 items through Amazon.  Dkt. 134, Declaration of Hery Hope ("Hope Decl."), ¶ 4, Ex. A.  For his part, Plaintiff Rees placed nineteen retail orders on his Amazon

---

[3] On September 25, 2017, Fisse's contacted Audible customer service to dispute charges to a payment card held by Rees.  *See* Bryan Decl. ¶¶ 12-14.  During the call, Fisse said she wished to cancel her account, and the Audible customer service representative—while acknowledging the request to cancel—informed her that there was still an unredeemed membership credit in her account and that cancelling immediately would result in losing the unredeemed credit.  *Id.*  The representative offered to "freeze" the account for three months, such that Fisse could have more time to pick a book without incurring any monthly membership fees.  *Id.*  Fisse declined the offer, stating that she would pick an audiobook to redeem her final unredeemed credit for that night.  *Id.*  But Fisse never followed through, instead choosing to cancel her account with an unredeemed credit still on it.  *Id.* ¶ 14.

account from October 25, 2013 through May 6, 2016.  *See id.* ¶ 4, Ex. B.  Each time either Fisse

or Rees placed an order using standard Amazon checkout flows over these periods, they received

notice of Amazon's Conditions of Use and were informed that by placing an order they were

agreeing those terms—all of which included arbitration provisions and class action waivers.

Dkt. 133, Declaration of Karen Ressmeyer ("Ressmeyer Decl."), ¶¶ 16-19, Exs. M-Q (Amazon's

standard checkout flows); *see also id.* ¶¶ 4-15, Exs. A-L (compilation of Amazon Conditions of

Use over time).  Additionally, Fisse agreed to the Amazon Conditions of Use when she signed up

for Amazon Prime on December 13, 2013.  Ressmeyer Decl. ¶¶ 20-22, Exs. R-T.

     Amazon's arbitration and class action waiver provisions are broad, applying to any

dispute or claim relating in any way to the customer's use of Amazon.  *See id.* ¶¶ 4-15, Exs. A-L.

Similarly, Audible's arbitration agreements cover **"[a]ny dispute or claim relating in any way**

**to your use of the Audible Service."**   Massello Decl. ¶ 4, Ex. A at 2 (bold in original); *see also*

*id.* ¶ 6, Ex. B at 2 (2017 terms covering "[a]ny dispute or claim arising from or relating to these

Terms or your use of the Service").  As discussed below, those broad agreements require

arbitration of Plaintiffs' claims.

## ARGUMENT

     On a motion to compel arbitration under the Federal Arbitration Act (FAA), 9 U.S.C.

§§ 1-14, a court's role is limited to two narrow inquiries: first, to "determine whether a binding

arbitration agreement exists between the parties" and then to "determine whether the dispute falls

within the parameters of the arbitration agreement."  *Singh v. Interactive Brokers LLC*, 219 F.

Supp. 3d 549, 554–55 (E.D. Va. 2016) (citing *Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th

Cir. 2001)).  As explained in the sections that follow, Plaintiffs agreed to arbitrate the claims in

this lawsuit when they repeatedly assented to the arbitration provisions in Amazon Conditions of

Use, and when Fisse repeatedly agreed to the arbitration provision in Audible's Conditions of

Use. Those agreements bar this lawsuit, and given the liberal federal policy favoring arbitration,

Plaintiffs cannot offer any reason that the Court should not enforce them.

1.     **PLAINTIFFS REPEATEDLY AGREED TO BINDING ARBITRATION AGREEMENTS THAT GOVERN THIS DISPUTE.**

Courts "apply ordinary state-law principles that govern the formation of contracts" to

determine whether parties agreed to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S.

938, 944 (1995). A consensus of courts across the country agree that, in the digital context,

"[t]he critical issue [is] whether the Internet-based purchase was structured so that the purchaser

necessarily had *actual or constructive notice* of the terms of use which included an agreement to

arbitrate." *Bergenstock v. LegalZoom.com, Inc.*, No. 13 CVS 15686, 2015 WL 3866703, at *5

(N.C. Super. Ct. June 23, 2015) (citing Ninth Circuit law) (emphasis added); *see also Plazza v.

Airbnb, Inc.*, 289 F. Supp. 3d 537, 548 (S.D.N.Y. 2018) (noting that the touchstone for assent in

Internet transactions is whether there is "inquiry notice of the terms and Plaintiffs assented to the

terms through the conduct that a reasonable person would understand to constitute assent")

(internal citations, quotations, and alterations omitted); *accord Selden v. Airbnb, Inc.*, No. 16-

CV-00933 (CRC), 2016 WL 6476934, at *4-5 (D.D.C. Nov. 1, 2016), *motion to certify appeal

denied*, No. 16-CV-933 (CRC), 2016 WL 7373776 (D.D.C. Dec. 19, 2016), *and appeal

dismissed*, 681 F. App'x 1 (D.C. Cir. 2017), *cert. denied*, 138 S. Ct. 222, 199 L. Ed. 2d 120

(2017) (synthesizing relevant case law).

This constructive or "inquiry" notice standard is not difficult to satisfy, and it is easily

met here. "Any reasonably-active adult consumer will almost certainly appreciate that by

signing up for a particular service, he or she is accepting the terms and conditions of the

provider." *Selden*, 2016 WL 6476934, at *5 (holding that user was bound by arbitration clause,

where Airbnb presented a hyperlinked disclosure stating that "By signing up, I agree to Airbnb's Terms of Service" in close proximity to sign-up buttons); *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (vacating lower court's denial of motion to compel arbitration, and holding that the Uber mobile app provided reasonably conspicuous notice of, and that customer unambiguously assented to Uber's terms of service).

Under the inquiry notice standard, even a single consent will be sufficient to bind a plaintiff to an arbitration agreement. *See, e.g.*, Dkt. 53 at 14-15 (finding that a 2015 Audible credit redemption flow on the Amazon.com desktop website afforded Beals "constructive notice that redeeming a credit for an audiobook constituted assent to the Audible COU and the arbitration provision contained therein"). Here, as explained below, Plaintiffs Fisse and Rees repeatedly agreed to arbitrate all disputes against Audible and its parent company, Amazon.

**A.      November 15, 2015 Sign-up for Audible Free Trial Membership**

Plaintiff Fisse agreed to arbitrate disputes relating to the use of Audible when she signed up an "Audible 30-Day Free Gold Monthly" free trial promotion on November 15, 2015. Basu Decl. ¶¶ 2-3, Exs. A-B; *see also* Bryan Decl. ¶ 8. Fisse signed up for the trial using her Amazon account, *see* Bryan Decl. ¶¶ 4, 8, through the Audible.com mobile website, *see* Basu Decl. ¶ 2, Ex. A. At the time, the Audible Service Conditions of Use included a complete standalone arbitration agreement with a class action waiver provision stating that "**[a]ny dispute or claim relating in any way to your use of the Audible Service will be resolved by binding arbitration, rather than in court . . . .**" Massello Decl. ¶ 4, Ex. A at 3 (bold in original).

To sign up for her trial membership, Audible required Fisse to proceed through a series of screens on the mobile website. *See* Basu Decl. ¶ 3, Ex. B. Once she had confirmed a payment card, Fisse was presented with a screen from which she could start her Audible membership, the relevant portion of which appears below:

*See* Basu Decl. ¶ 3, Ex. B at 4.  To proceed, Fisse had to click a button that read "Start Now."  *Id.*

Immediately under this button was language providing that "By completing your purchase, you

agree to Audible's Conditions of Use . . . ."  *Id.*  Further down, in a section titled "Audible Free

Trial Details" was additional language that read as follows:

> After the trial, your paid membership will begin at $14.95 per
> month. With your membership, you will receive one credit every
> month, good for any audiobook on Audible.
>
> Cancel anytime, effective the next monthly billing cycle. Cancel
> before your trial ends and you will not be charged. Check out the
> full <u>terms</u> and <u>policies</u> that apply to Audible membership.

*Id.*  The language "terms" appeared in blue and contained a hyperlink to the Audible Service

Conditions of Use and its arbitration agreement.  *Id.*; *see also* Massello Decl. ¶ 4, Ex. A at 2.  All

this language was presented on a single screen, with no scrolling required, and Plaintiff Fisse

could not having started her Audible membership without first clicking the "Start Now" button.

Basu Decl. ¶ 3, Ex. B at 4.

Given the context, with the lower third of the final sign-up screen devoted to details about

her Audible membership, under an objective standard this flow created assent to the Audible

Service Conditions of Use and its arbitration agreement.  It contained not one, but *two*,

statements providing that terms applied to the membership; included a hyperlink to the substantive terms themselves; and presented all the language together on a single screen with no ability to avoid the disclosure by scrolling and no ability to proceed with a membership except by clicking the "Start Now" button.

Courts have routinely held that this type of disclosure creates constructive notice and constitutes valid and enforceable assent. *See Selden*, 2016 WL 6476934, at *5 (finding that user was bound by an arbitration clause through a "sign-in wrap" agreement and collecting cases); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012) (enforcing forum selection clause based on disclosure below "Sign Up" button); *Starke v. Gilt Groupe, Inc.*, No. 13 CIV. 5497 LLS, 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (enforcing arbitration clause and holding that plaintiff's decision to click "Shop Now" button represented assent). Indeed, any contrary finding runs afoul of the United States Supreme Court's perennial admonishment that courts must "place arbitration agreements 'on equal footing with all other contracts.'" *Kindred Nursing Centers Ltd. P'ship v. Clark*, 581 U.S. __, 137 S. Ct. 1421, 1424 (2017) (quoting *DIRECTV, Inc. v. Imburgia*, 577 U.S. __, 136 S. Ct. 463, 468 (2015)); *accord AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).

In the earlier *McKee* case, Judge Wu in the Central District of California held that the language stating "by completing your *purchase*" when coupled with a *free trial* did not create adequate notice. *See* Dkt. 53 at 11-12. Judge Wu's ruling in that regard is not binding here, for two reasons. First, Audible respectfully submits that the California court erred on this point, because even the notice at issue in that case provided constructive notice that signing up for the service was subject to terms and conditions. Second, the layout of Fisse's sign-up page was

significantly different, with no scrolling and no ability to click on Start Now button without also seeing the relevant disclosures. The disclosures here provided objectively reasonable notice that starting the membership would commence a paid subscription and constitute agreement to Audible's terms. This is more than sufficient to put a reasonable consumer on notice and create assent to Audible's terms.

### B. April 14, 2017 Sign-up for Audible Direct Paid Membership

Plaintiff Fisse also agreed to arbitrate when she signed up for a paid Audible Gold Monthly membership—without a free trial—on April 14, 2017. Basu Decl. ¶¶ 4-5, Exs. C-D; *see also* Bryan Decl. ¶ 9. Fisse signed up for the direct paid membership through the Audible.com mobile website. Basu Decl. ¶ 4, Ex. C. To do so, she proceeded through to a screen that contained language similar to the language that appeared for her earlier November 15, 2015 sign-up. *Compare* Basu Decl. ¶ 4, Ex. D (April 2017 sign-up flow), *with id.* ¶ 3, Ex. B at 4 (November 2015 sign-up flow). Because this sign-up did not involve a free trial, the concern Judge Wu identified concerning the use of the "by completing your purchase" language does not apply.

A screenshot of the relevant portion of that screen appears below:

As with the November 2015 sign-up screen, the page contained a prominent "Start Now" button, followed by language that read as follows: "By completing your purchase, you agree to Audible's Conditions of Use and Privacy Notice and authorize us to charge your designated credit card or another available credit card on file."  Basu Decl. ¶ 4, Ex. D.  Because this was a paid membership, the section below was titled "Audible Membership Details" instead of "Audible Free Trial Details."  As with the November 15, 2015 screen, Fisse's only option for starting a direct paid membership was to click the "Start Now" button and proceed, and the disclosure immediately below contained hyperlinked "terms" language that led directly to Audible Service Conditions of Use and its arbitration agreement.  Basu Decl. ¶ 4, Ex. D.

At the time, the Audible Service Conditions of Use stated that "**[a]ny dispute or claim arising from or relating to these Terms or your use of the Service is subject to the binding arbitration**" and expressly incorporated by reference the Amazon Conditions of Use.  Massello Decl. ¶ 6, Ex. B at 2 (bold in original).  The Amazon Conditions of Use, in turn, contained an arbitration agreement with class action waiver covering "**[a]ny dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com . . . .**"  Massello Decl. ¶ 7, Ex. C at 3-4 (bold in original).

As with her earlier sign-up, Fisse's April 14, 2017 sign-up provided clear notice that starting the membership constituted agreement to Audible's terms.  This, too, is more than sufficient to create assent to Audible's terms.

### C.     April 14, 2017 Credit Redemptions on Audible Desktop Website

In addition to signing up for direct paid membership on April 14, 2017, Fisse also visited the Audible desktop website and redeemed two membership credits that day.  Basu Decl. ¶¶ 4, 6. In fact, it appears that Fisse had signed up for an Audible Gold Monthly membership on April 14, 2017 to exchange some audiobooks using the "Great Listen Guarantee."  Bryan Decl. ¶ 9.

She cancelled her membership later that same day.[4]  *Id.*

Fisse redeemed those two credits on the Audible.com desktop website using a 1-Click purchase flow.  Basu Decl. ¶ 6, Ex. E.  To make purchases with this 1-Click mechanism, Fisse selected the "Buy with 1 Credit" option and then clicked a prominent "Confirm Purchase" button.  *Id.*  The general layout of the buy-box from this Audible desktop website flow, including the placement of disclosure language within it, appears below:



*Id.*  At the time, the language beneath the "Confirm Purchase" button in the buy-box was slightly different and read:  "By completing your purchase you agree to Audible's <u>Conditions of Use</u> and <u>Privacy Notice</u>."  *Id.* ¶ 7, Ex. F.  The underlined "Conditions of Use" language appeared in blue and contained a hyperlink to the to the Audible Service Conditions of Use at the time, which incorporated by reference the arbitration agreement and class action waiver provision in the Amazon Conditions of Use, as described above.  *Id.; see also* Massello Decl. ¶¶ 6-7, Exs. B-C.

Had Fisse only clicked that "Conditions of Use" link during either of her April 14, 2017 audiobook purchases on the Audible desktop, she would have been directed to the Audible Service Conditions of Use and the Amazon Conditions of Use and arbitration agreement that they incorporated by reference.

---

[4]  This conduct demonstrates Fisse's familiarity with Audible's terms and policies.

**D.      July 21, 2017 Sign-up for Audible on the Amazon Mobile App**

Fisse most recently assented to the Audible Conditions of Use and the arbitration agreement when she signed up for an "Audible 30-Day Free Gold Monthly + Bonus Credit" promotion not on Audible's website, but on the *Amazon* shopping mobile app for Android. Murphy Decl. ¶ 2, Ex. A; *see also* Massello Decl. ¶¶ 9-10, Exs. D-E.  This time, at the very top of the sign-up page she was presented with a prominent disclosure about Audible's Conditions of Use, followed by a "Confirm your free trial" button:

> By completing your purchase, you agree to Audible's <u>Conditions of Use</u> and <u>Privacy Notice</u> and authorize us to charge your designated credit card or another available credit card on file. Membership will continue until you choose to cancel. You may cancel anytime by visiting your Audible Account page. Additional Taxes may apply.
>
> **Confirm your free trial**
>
> After 30 days, Audible is only $14.95/month. Cancel anytime.

Murphy Decl. ¶¶ 3-5, Exs. B-D.  As shown above, at the time the language above the "Confirm your free trial" button stated as follows: "By completing you purchase you agree to Audible's <u>Conditions of Use</u> and <u>Privacy Notice</u> and authorize us to charge your designated credit card or another available credit card on file.  Membership will continue until you choose to cancel.  You may cancel anytime by visiting your Audible Account page.  Additional taxes may apply." Murphy Decl. ¶ 5, Ex. D.  The "Conditions of Use" language was a hyperlink, and if Fisse had pressed it, she would have been directed to the Audible Conditions of Use in effect at that time. *Id.*  Those terms incorporated by reference in the arbitration agreement in the Amazon Conditions of Use.  Massello Decl. ¶¶ 9-10, Exs. D-E.  At the bottom of the sign-up page was another hyperlink, this time directly to the Amazon Conditions of Use and its arbitration

agreement.  Murphy Decl. ¶¶ 3-5, Exs. B-D.  To start her membership from the Amazon shopping app, Fisse had to click on one of the "Confirm your free trial" buttons on the sign-up page.  *Id.*

While the button Fisse had to click to proceed said "Confirm your free trial," any reasonable consumer would be put on notice that the disclosure above the button meant she was bound by Audible's terms.  Indeed, that sign-up involved shopping for a book and then "purchasing" it by starting the trial membership.  *See* Murphy Decl. ¶ 4, Ex. C.  That disclosure thus provided Fisse—yet again—with constructive notice of Audible's Conditions of Use, and "[a]ny reasonably-active adult consumer will almost certainly appreciate that by signing up for a particular service, he or she is accepting the terms and conditions of the provider."  *See Selden*, 2016 WL 6476934, at *5.  Accordingly, Fisse's sign-up on the Amazon mobile app also constituted assent to Audible's Conditions of Use, and the arbitration agreement that those terms incorporate by reference.

Moreover, and as discussed further below, this sign-up on the Amazon shopping app also underscores why *Amazon's* arbitration agreement—which was also expressly incorporated by reference into Audible's service terms—applies here.  Fisse repeatedly agreed that any claims relating to her use of Amazon would be resolved through arbitration.  There is no question that her claims relating to signing up for a membership *on an Amazon mobile app* "relates to" her use of Amazon.[5]

---

[5] This fact also distinguishes the case of Mr. McKee, who signed up only on the *Audible* mobile website, not on an Amazon website or app.  Indeed, Judge Wu indicated that he would have granted Audible's motion to compel arbitration as to McKee if McKee had signed up for his Audible membership through Amazon.  *See* Dkt. 27 at 10 (in a tentative ruling, finding that compelling arbitration was warranted as to McKee based on an initial understanding that "he had repeatedly assented to the Amazon COU, and had signed into Audible using his Amazon Prime account").

In addition to Fisse's repeated agreement to Audible's terms, Plaintiffs also accepted *Amazon's* terms each time they placed a purchase order from Amazon's standard checkout page, whether they used the Amazon.com desktop website, its mobile website, or mobile app.  *See* Ressmeyer Decl. ¶¶ 16-19, Exs. M-Q.  As discussed further below, this dispute falls within the scope of that arbitration agreement as well.

At the top of the standard checkout pages on the Amazon mobile websites and apps, there was language that stated "By placing your order, you agree to Amazon's privacy notice and conditions of use[,]" followed by a prominent "Place your order" button.  Ressmeyer Decl. ¶ 19, Exs. O-Q.  Meanwhile, during the relevant time, the standard checkout flow for the Amazon.com desktop website contained the same hyperlinked disclosure language, but in one of two different configurations depending on the time of access: until September 12, 2016, the standard desktop checkout had the disclosure *above* a prominent "Place your order" button on the right side of screen; after September 12, 2016, the standard desktop checkout had the same disclosure *immediately below* the "Place your order" button.[6]  Ressmeyer Decl. ¶¶ 17-18, Exs. M, N.  In all cases, however, the underlined "conditions of use" language constituted hyperlinks that would direct the customer to the Amazon Conditions of Use in effect at that time.  Ressmeyer Decl. ¶¶ 17-18, Exs. M, N.

Since August 2011, the Amazon Conditions of Use contained a dispute resolution provision with an arbitration agreement and class waiver provision.  They also informed Amazon customers that they, and not Amazon, are responsible for purchases made on those accounts: "If

---

[6] The Central District of California in the related *McKee* action also found that Amazon's current standard checkout flows created assent to the Amazon Conditions of Use and its arbitration agreement.  Dkt. 37 at 17 & n.7.

you use any Amazon Service, you are responsible for maintaining the confidentiality of your account and password and for restricting access to your computer, and you agree to accept responsibility for all activities that occur under your account or password." *See, e.g.*, Ressmeyer Decl. ¶ 15, Ex. F at 2. Thus, to the extent Fisse allowed Rees to use her account and add his payment card, she accepted responsibility for charges incurred on that card.

Plaintiffs Fisse and Rees are both long-time Amazon customers and, collectively, they have placed over two hundred separate retail purchase orders through Amazon. Hope Decl. ¶ 4, Exs. A-B. All but a small handful of these orders were placed through the standard Amazon checkout flows. *See id.* ¶¶ 5-8. Amazon's records also show that Fisse placed no fewer than eight retail purchase orders through the standard Amazon desktop checkout flow, including at least two orders through the current Amazon desktop checkout flow that includes a hyperlinked disclosure below the "Place your order" button. *See* Dkt. 135, Declaration of Sorin Stoiana ("Stoiana Decl."), ¶ 5, Ex. A; *cf.* Hope Decl. ¶¶ 4, 7, Ex. A. Plaintiff Rees, who repeatedly agreed to Amazon's terms himself, also appears to concede that he had authorized Fisse to use a payment card held in his name on her Amazon account; indeed, Plaintiffs' Third Amended Complaint alleges that Rees himself "used his debit card on Fisse's Amazon account" to make a purchase. *See* TAC at ¶¶ 8, 13.

Amazon's standard checkout flows create assent to the Amazon Conditions of Use. In *Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862 (9th Cir. 2017), the Ninth Circuit found that the notices in the historical desktop checkout pages, *i.e.*, those in place before September 12, 2016, "which alerted Wiseley that clicking the corresponding action button constituted agreement to the hyperlinked COU, were in sufficient proximity to give him a reasonable opportunity to understand that he would be bound by additional terms." 709 F. App'x at 864; *see also Ekin v.*

*Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1175-78 (W.D. Wash. 2014) (finding that purchases on Amazon created assent).

Plaintiffs may try to raise *Nicosia v. Amazon.com, Inc.,* 834 F.3d 220 (2d Cir. 2016), to escape their agreements with Amazon.  But *Nicosia* arose in a significantly different legal posture.  In that case, the Second Circuit considered not a motion to compel arbitration, but a motion to dismiss under Rule 12(b)(6).  834 F.3d at 230.  Given the context, the usual standard did not apply because the "motion to dismiss neither sought an order compelling arbitration nor indicated that Amazon would seek to force Nicosia to arbitrate in the future." *Id.*  Accordingly, the court applied the plausibility standard under Rule 12(b)(6) instead.  *Id.*  Under this standard, the *Nicosia* court found that the plaintiff had stated a plausible claim for relief to survive a motion to dismiss.  Id. at 238.  But the panel also clarified that it did "not hold that there was no objective manifestation of mutual assent here as a matter of law." *Id.*  Rather, it found that that the issue was inappropriate for resolution on the pleadings.  *Id.*  That standard does not apply here, where the Court not only may but must consider evidence outside of the pleadings.  The Second Circuit also sharply limited the potential reach of *Nicosia* in the more recent *Meyer* decision.  There, the Second Circuit reversed a district court's denial of a motion to compel arbitration based on a user sign-up similar to the sign-ups and purchases here.  *Meyer*, 868 F.3d at 74.  And in all events, following remand by the Second Circuit in *Nicosia*, the magistrate in the lower court still recommended compelling the case to arbitration, finding that the plaintiff there "had constructive notice of the [arbitration] provision based on his repeat purchases on Amazon.com." *Nicosia v. Amazon.com, Inc.*, Case No. 1:14-cv-04513-ILG-LB (E.D.N.Y), Dkt. 156 at 25 ("[A]fter 38 visits to the same apple stand, reasonable minds would agree that the user

should know that the stand's apples are not for free.").[7]

### F. December 13, 2013 Sign-up for Amazon Prime

Plaintiff Fisse also agreed to arbitrate all claims as to Amazon and its affiliates when she signed up for the Amazon Prime service on December 13, 2013. *See* Ressmeyer Decl. ¶ 21, Ex. T at 1 ("These Terms are between you and Amazon Services LLC and/or its affiliates ('Amazon.com' or 'Us') and govern our respective rights and obligations."). The Prime Terms in effect at the time of Fisse's sign-up provided, in the very first paragraph, that the "use of the Amazon.com website and PrimePrime [*sic*] membership are also governed by [Amazon's] Conditions of Use and Privacy Notice," and they incorporated by reference all the terms in the Amazon Conditions of Use. *Id*. Meanwhile, the Amazon Conditions of Use in effect at the time included an arbitration agreement and class waiver provision covering "**[a]ny dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com . . . .**" Ressmeyer Decl. ¶¶ 9, 21, Ex. F at 5 (bold in original), Ex. T at 1. At the time of the December 2013 sign-up, Amazon required users to click a sign-up button with hyperlinked disclosure language next to it, directing customers to the Amazon Prime Terms. Ressmeyer Decl. ¶¶ 20, 22, Exs. R, S.

### 2. PLAINTIFFS' CLAIMS IN THIS CASE FALL WITHIN THE SCOPE OF BOTH THE AUDIBLE AND AMAZON ARBITRATION PROVISIONS.

A "presumption of arbitrability" attaches whenever a court recognizes a valid contract containing an arbitration clause. *AT&T Techs, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Accordingly, "the Fourth Circuit has said that arbitration 'should not be denied unless it may be said with positive assurance that the arbitration [agreement] is not susceptible of

---

[7] Audible attaches the August 18, 2017 report and recommendation of the magistrate judge in *Nicosia* as **Exhibit B** to this memorandum.

an interpretation that covers the dispute.'" *James C. Greene Co. v. Great Am. E & S Ins. Co.*, 321 F. Supp. 2d 717, 721 (E.D.N.C. 2004) (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989)); *cf. King v. Bryant*, 225 N.C. App. 340, 345 (2013) ("As a general matter, the public policy of [North Carolina] favors arbitration."). Given the strong federal policy in favor of arbitration, all "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

A. **The Plain Language of Plaintiffs' Agreements to Arbitrate Covers This Dispute.**

Here, the arbitration agreements at issue broadly cover "any dispute or claim relating in any way to your use of" the Amazon or Audible services. *See, e.g.*, Massello Decl. ¶ 4, Ex. A at 3 (2015 Audible terms covering "[a]ny dispute or claim relating in any way to your use of the Audible Service"); *id.* ¶ 6, Ex. B at 2 (2017 Audible terms covering "[a]ny dispute or claim arising from or relating to these Terms or your use of the Service"); Ressmeyer Decl. ¶ 9, Ex. F at 5 (2012 through 2015 Amazon terms covering "[a]ny dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com"). The Amazon Conditions of Use also make clear that "Amazon" includes its "affiliates," which would include its subsidiary, Audible. *See, e.g.*, Ressmeyer Decl., Ex. J (defining "Amazon Services LLC and/or its affiliates" as "Amazon" under the agreement) Indeed, when signing up for her Audible memberships, Fisse was required to use her Amazon account, and she was informed that Audible is "an Amazon company." *See* Basu Decl. ¶¶ 3, 5-6, Ex. B ("powered by Amazon services"), Ex. D ("We're an Amazon company"), Ex. E (logo at header reading "Audible – an Amazon company").

The broad "any dispute" language in both the Audible and Amazon agreements leaves no

doubt that the dispute here is subject to arbitration. Indeed, courts examining the substantially identical Amazon arbitration agreement have found that its use of "any dispute" language gave the agreement broad scope—and retroactive effect: "[W]hen arbitration agreements contain broad 'relating to any dispute' language, both future *and past disputes* are included in the scope of the arbitration agreement." *Ekin,* 84 F. Supp. 3d at 1178 (emphasis added) (arbitration agreement in Amazon Conditions of Use had retroactive effect); *see also Peters v. Amazon Servs., LLC*, 2 F. Supp. 3d 1165, 1173 (W.D. Wash. 2013) (same with Amazon business services agreement*); accord Drews Distrib., Inc. v. Silicon Gaming, Inc*., 245 F.3d 347, 348 (4th Cir. 2001) (reversing district court's denial of arbitration motion where arbitration provision required parties to arbitrate any claim "related to" a distribution contract.)[8]

Here, both Plaintiffs' claims "relate to" the use of Amazon. The charges to Mr. Rees's card occurred only because he added his payment card, or allowed it to be added, to an Amazon account, which Fisse then used to sign up for Audible in July 2017. *See* TAC at ¶¶ 5-15. Fisse also performed the membership sign-up that led to the charge directly on the Amazon mobile app, not on Audible. *See* Murphy Decl. ¶ 2, Ex. A. Accordingly, the allegedly inadequate disclosures during that sign-up—*i.e.*, about what card would be charged, and the effect of cancellation on unredeemed credits—were all on Amazon. Thus, there is no question that this dispute "relates to" Plaintiffs' use of Amazon, and these claims fall within the plain scope of Plaintiffs' agreements with Amazon.

---

[8] Because courts regularly apply arbitration agreements retroactively, there is no merit to any suggestion from Plaintiffs that their agreements to arbitration when redeeming credits or otherwise should not govern existing disputes: "courts have generally applied broad 'any dispute' language retroactively, especially when combined with language that refers to all dealings between the parties." *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 267 (4th Cir. 2011) (reversing lower court's finding that arbitration agreement did not have retroactive effect).

The dispute also falls squarely within the scope of Fisse's arbitration agreements with Audible, which are substantively identical to her arbitration agreement with Amazon. As discussed above, during the course of her memberships, the Audible Conditions of Use required arbitration of **"[a]ny dispute or claim relating in any way to your use of the Audible Service."** Massello Decl. ¶ 4, Ex. A at 3 (bold in original); *see also id.* ¶ 6, Ex. B at 2 (2017 terms covering "[a]ny dispute or claim arising from or relating to these Terms or your use of the Service"). Given this broad language, there can be no legitimate argument that both Plaintiffs' claims do not fall within the scope of Fisse's arbitration agreements with Audible.

**B.    Equitable Estoppel Also Requires Arbitration of The Claims in This Lawsuit.**

Even assuming (contrary to fact) that Rees's agreement to arbitrate disputes "related to" the use of Amazon, and Fisse's agreements to arbitrate disputes related to the use of Audible and Amazon, did not apply by their own terms to this dispute, principles of equitable estoppel would still compel sending the entire case to arbitration. "Equitable estoppel precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) (affirming district court's grant of motion to compel arbitration against non-signatory based on doctrine of equitable estoppel, where non-signatory sought to claim benefit of contract with arbitration agreement that applied to "any dispute arising out of" the contract). For instance, when allegations against a parent company and its subsidiary are "based on the same facts and are inherently inseparable" but only one of the entities is signatory to an arbitration agreement covering the dispute, courts have applied equitable estoppel principles to compel the entire dispute to arbitration. *J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320–21 (4th Cir. 1988) (ordering all claims against non-signatory parent company to arbitration, based on arbitration agreement of subsidiary).

After all, if the non-signatory had to try the case on the same facts, any "arbitration proceedings [between the signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Sam Reisfeld & Son Import Company v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976). "[A]pplication of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), *abrogated on other grounds by Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 631 (2009).

State law governs whether an arbitration clause is enforceable against a non-signatory under the FAA. *Arthur Andersen*, 556 U.S. at 631. Consistent with the equitable estoppel principles explained above, Washington law—which governs the relevant agreements[9]— provides that a signatory to a contract containing an arbitration provision can be compelled to arbitrate against a non-signatory "where the subject matter of the dispute is intertwined with the contract providing for arbitration, and the non-signatory and signatory parties have a close relationship." *E. W. Bank v. Bingham*, 992 F. Supp. 2d 1130, 1133 (W.D. Wash. 2014). Both

---

[9] Every relevant agreement contains a choice of law provision naming Washington state law. *See* Massello Decl. ¶¶ 4, 6-7, 9-10, Ex. A at 3, Ex. B at 2, Ex. C at 4, Ex. D at 2, Ex. E at 5; Ressmeyer Decl. ¶¶ 4-15, Ex. A at 5-6, Ex. B at 4, Ex. C at 4, Ex. D at 4, Ex. E at 5, Ex. F at 6, Ex. G at 6, Ex. H at 6, Ex. I at 4, Ex. J at 6, Ex. K at 6, Ex. L at 4. In the Fourth Circuit, "choice-of-law provisions are presumed valid." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 713 F. Supp. 2d 527, 535 (W.D.N.C. 2010) (citing *Brock v. Entre Computer Centers, Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991)). A choice of law provision is reasonable unless (1) its formation was "induced by fraud or overreaching"; (2) the complaining party "will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum"; (3) the "fundamental unfairness of the chosen law may deprive the plaintiff of a remedy"; or (4) its enforcement would "contravene a strong public policy of the forum state." *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (vacating district court's order denying enforcement of choice of forum and law clauses, and remanding with instructions to dismiss) (internal citations and quotations omitted). None of these exceptions apply here, and there is no reason to depart from the choice of Washington state law in this case.

requirements are met here, both as between Fisse and Rees, and between Amazon and its wholly-owned subsidiary, Audible.

Examining the relationship between a signatory to an arbitration agreement and an affiliated non-signatory, Washington courts frequently recognize that the relationship between a parent company and a subsidiary is sufficiently close for principles of equitable estoppel to compel arbitration against both, even if only one company has signed the agreement: "When the charges against a parent and subsidiary are based on the same facts, as is the case here, and are inherently inseparable, a court may order arbitration of claims against the parent even though the parent is not a party to the arbitration agreement." *Townsend v. Quadrant Corp.*, 153 Wash. App. 870, 889 (2009), *aff'd on other grounds*, 173 Wash. 2d 451 (2012); *see also Wiese v. Cach, LLC*, 189 Wash. App. 466, 482, (2015) (compelling claims against parent company to arbitration where parent company was not signatory to arbitration agreement, based on principles of equitable estoppel and collecting cases discussing parent/subsidiary relationship); *Alaska Protein Recovery, LLC v. Puretek Corp.*, No. C13-1429, 2014 WL 2011235, at *5 (W.D. Wash. May 16, 2014) (same). Thus the relationship between Amazon, a parent company, and Audible, its subsidiary, is sufficiently close to satisfy this criterion. The TAC itself alleges "Audible is an affiliate of Amazon.com, Inc." TAC at ¶ 15. Applying the same logic, Fisse's relationship with Rees, who added his card to Fisse's account and used it to make purchases, fits the bill too. Even standing alone, Audible's agreements to arbitrate with Fisse are a sufficient basis for compelling arbitration of Rees's claims against it, and by the same token both Plaintiffs' agreements with Amazon would require compelling arbitration of the entire lawsuit against Audible.

There is also no question that this dispute is inextricably intertwined with both Plaintiffs' respective agreements with Amazon and Fisse's agreements with Audible. For instance,

Plaintiffs' respective contracts with Amazon govern any use of Amazon services, and Plaintiffs' primary grievance is that Audible charged a payment card on file with Fisse's *Amazon* account. *See* TAC at ¶¶ 13-14.  Moreover, the relevant Audible Conditions of Use after 2015 expressly incorporate by reference the arbitration agreement in the Amazon Conditions of Use.  *See* Massello Decl. ¶¶ 6-7, 9-10, Ex. A at 2,  Ex. B at 2, Ex. C at 5, Ex. D at 2, Ex. E at 5.  Amazon's Conditions of Use provide that "you agree to accept responsibility of all activities that occur under your account or password."  *See, e.g.*, Ressmeyer Decl. ¶ 15, Ex. L at 2.  Yet the claims arise from the fact that Fisse allowed her boyfriend to add a card to her account before she used it to sign up for an Audible membership.  Fisse and Rees claims also stem from Fisse's most recent sign-up in July 2017, which occurred on the Amazon mobile app, not on Audible.com. And Rees has in fact sued *Amazon* in the Central District of California based on precisely the same facts.  *See Weber*, Case No. 2:17-cv-08868-GW-E, at Dkt. 1.  The alleged conduct, Audible, Amazon, and the agreements between the parties, simply cannot be separated.

For this reason, this would make no sense to bifurcate the claims of the Plaintiffs here. The predicate facts of the claims, and the parties on either side, are closely related to such a great degree that both the plain terms of the arbitration and principles of equity should compel the Court to order not only Fisse's claims, but the entire matter, to binding arbitration.

**3.     THE ARBITRATION AGREEMENTS AND CLASS ACTION WAIVERS ARE ENFORCEABLE.**

There are no material differences between the arbitration provisions that appeared in the Audible and Amazon Conditions of Use before this Court, and those that the Central District of California court found enforceable as to other plaintiffs in the related California action.  *See* Dkt. 37 at 18-21; Dkt. 53 at 15.  Indeed, the Conditions of Use at issue here are substantively identical to those that a number of courts of have consistently approved.  *See Ekin*, 84 F. Supp. 3d at 78

(finding that Amazon's arbitration provision was not unconscionable); *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1064-76 (S.D. Cal. 2015), *aff'd sub nom. Wiseley*, 709 F. App'x 862; *Peters*, 2 F. Supp. 3d at 1170, *aff'd*, No. 14-35294, 2016 WL 5940052 (9th Cir. Oct. 13, 2016) (same with substantively identical provision in Amazon business services agreement).

The Federal Arbitration Act (FAA) makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act reflects an "emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam) (internal quotation marks omitted). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 563 U.S. at 343. As such, when the claim a plaintiff asserts falls within the scope of a valid arbitration provision, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

## A.     The Agreements' Class Action Waiver is Enforceable.

Since the Supreme Court's decision in *Concepcion*, it has been well-settled that the inclusion of a class action waiver does not invalidate an arbitration provision, regardless of any state law to the contrary. Instead, class action waivers—and arbitration agreements containing such waivers—are valid and enforceable. *Concepcion*, 563 U.S. at 352-53; *see also Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 231-232 (2013) (upholding class action waiver and noting that Rule 23 does not "establish an entitlement to class proceedings for the vindication of

statutory rights").

The arbitration provision at issue here—requiring submission of claims to binding arbitration with a class action waiver—is not meaningfully distinguishable from those considered and found enforceable in these cases. Applying this line of cases to Amazon's arbitration provision, courts all across the country have found the provision, and the class action waiver it contains, to be valid and enforceable. *See Ekin,* 84 F. Supp. 3d. at 1175 (enforcing Amazon's arbitration provision and compelling arbitration); *Fagerstrom,* 141 F. Supp. 3d at 1057-60, 1064-76 (same); *Peters*, 2 F. Supp. 3d 1165 at 1170(same).

**B.      The Agreement is Not Unconscionable.**

When plaintiffs attempt to avoid arbitration by asserting that the arbitration provision at issue is unconscionable, they bear the burden of putting forth facts showing unconscionability: "As arbitration is favored, those parties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013); *accord Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000) (party opposing arbitration bears burden of "establishing that Congress intended to preclude arbitration of the statutory claims at issue" or should be invalidated "on the ground that arbitration would be prohibitively expensive"). The argument that other provisions of a contract are unconscionable will not void an agreement to arbitrate. *See Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 70-71 (2010) ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."). The parties' agreement here is neither procedurally nor substantively unconscionable.

Turning first to procedural unconscionability, under Washington law (which governs both Amazon and Audible's agreements), "procedural unconscionability refers to the lack of

meaningful choice," including "the manner in which the contract was entered, whether each party had a reasonable opportunity to understand the terms of the contract, and whether the important terms were hidden in fine print." *Brinkley v. Monterey Fin. Servs., Inc.*, 242 Cal. App. 4th 314, 336 (2015) (applying Washington law). The fact that a consumer contract is a contract of adhesion does not render it procedurally unconscionable. *See Concepcion*, 563 U.S. at 346-47 (enforcing arbitration provision in an adhesion contract, noting "the times in which consumer contracts were anything other than adhesive are long past").

Here Plaintiffs had a meaningful opportunity to understand the terms of the contract, and as described in the sections above both Audible and Amazon gave Plaintiffs frequently notice of their terms that applied to the services. Nor can Plaintiffs credibly argue that the important terms are in "fine print," as Amazon shows that the arbitration provision is in bold text, so as to stand out from the rest of Amazon's COUs. Far from burying the arbitration provisions in fine print, Audible and Amazon both specifically emphasized these terms within their terms of service.[10]

The agreement is also not substantively unconscionable. "A term is substantively unconscionable where it is one-sided or overly harsh, shocking to the conscience, monstrously harsh, or exceedingly calloused." *Gandee v. LDL Freedom Enters., Inc.*, 176 Wash. 2d 598, 603 (2013) (internal citations and punctuation omitted). The arbitration provisions at issue here are none of these things. On the contrary, Amazon's arbitration agreement mirrors the very provision that the Supreme Court approved in *Concepcion*. It contains a number of provisions

---

[10] Some plaintiffs have argued that it is procedurally unconscionable to incorporate AAA Rules into an agreement by reference without attaching them to the agreement, as Amazon does, but courts have consistently rejected this argument. *See Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 367 P.3d 6 (2016) (holding that incorporation of AAA rules into agreement without attaching a copy did not render agreement procedurally unconscionable); *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wash. 2d 781, 801 (2009) (same).

designed to make arbitration accessible and fair to consumers. For instance, it includes a provision stating that Amazon will pay all arbitration fees for claims less than $10,000. *See, e.g.,* Ressmeyer Decl. ¶ 13, Ex. J at 6; *cf. Concepcion*, 563 U.S. at 336–37. It permits consumers to bring claims in small claims court in lieu of arbitration. *See, e.g.,* Ressmeyer Decl. ¶ 13, Ex. J at 6; *cf. Concepcion*, 563 U.S. at 336–37. It allows consumers to decide how they want to participate, whether "by telephone, based on written submissions, or in person in the county where you live or at another mutually agreed location." *See, e.g.,* Ressmeyer Decl. ¶ 13, Ex. J at 6; *cf. Concepcion*, 563 U.S. at 336–37. And it authorizes the arbitrator to "award on an individual basis the same damages and relief as a court," including injunctions and declaratory relief. *See, e.g.,* Ressmeyer Decl. ¶ 13, Ex. J at 6; *cf. Concepcion*, 563 U.S. at 336–37. Any attempt to cast the arbitration provision as so harsh and one-sided that it shocks the conscience, when the Supreme Court approved a virtually identical provision in *Concepcion* cannot succeed. Indeed, courts have consistently rejected the argument that Amazon's arbitration provision is unconscionable. *See Ekin,* 84 F. Supp. 3d. at 1178 (finding Amazon's arbitration provision was not unconscionable); *Fagerstrom*, 141 F. Supp. 3d at 1064-76 (same); *Peters*, 2 F. Supp. 3d at 1170 (same with business services agreement). The Court here should do the same.

## CONCLUSION

Plaintiffs repeatedly agreed to arbitrate this dispute with Audible through years of active use of the Amazon and Audible services. They cannot shirk their obligations under those agreements and they are thus barred from bringing these claims for class-based relief in court. The Court should therefore grant Audible's motion and compel this entire lawsuit to arbitration.

Dated:   July 6, 2018                         Respectfully submitted,

/s/ Jedediah Wakefield
Jedediah Wakefield (CSB No. 178058)
Email: jwakefield@fenwick.com
Armen N. Nercessian (CSB No. 284906)
Email: anercessian@fenwick.com
Matthew B. Becker (CSB No. 291865)
Email: mbecker@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:     415.875.2300
Facsimile:     415.281.1350

Attorneys for Defendant AUDIBLE, INC.

/s/ Stephen D. Feldman
Stephen D. Feldman (NCSB # 34940)
ELLIS & WINTERS LLP
Email:  stephen.feldman@elliswinters.com
4131 Parklake Avenue, Suite 400
Raleigh, NC 27612
Telephone:     919.865.7005
Facsimile:     919.865.7010

Attorney for Defendant AUDIBLE, INC.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the Court's

CM/ECF system on July 6, 2018.

<div style="margin-left:50%">

 /s/ Jedediah Wakefield
Jedediah Wakefield (CSB No. 178058)
Email: jwakefield@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

 /s/Stephen D. Feldman
Stephen D. Feldman (NCSB # 34940)
ELLIS & WINTERS LLP
Email: stephen.feldman@elliswinters.com
4131 Parklake Avenue, Suite 400
Raleigh, NC 27612
Telephone: (919) 865-7005
Facsimile: (919) 865-7010

</div>