IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-00211-D

| | |
|---|---|
| TAYLOR FISSE and BRYAN REES, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| AUDIBLE, INC., | ) ) |
| Defendant. | ) ) ) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT AUDIBLE, INC.'S MOTION TO COMPEL ARBITRATION**
**9 U.S.C. §§ 1-14**

## TABLE OF CONTENTS

                                                            **Page**

ARGUMENT ............................................................................................................2

I. THE "LAW OF THE CASE" DOCTRINE DOES NOT APPLY AND IN ANY EVENT WOULD NOT SUPPORT PLAINTIFFS' POSITION. .......................................................2

II. PLAINTIFFS FAIL TO OVERCOME EVIDENCE OF THEIR REPEATED AGREEMENTS TO ARBITRATE. ...................................................................4

III. BOTH THE PLAIN LANGUAGE OF PLAINTIFFS' AGREEMENTS AND EQUITABLE ESTOPPEL PRINCIPLES REQUIRE ARBITRATION. ............................7

IV. THERE IS NOTHING UNCONSCIONABLE ABOUT THE ARBITRATION AGREEMENTS OR THEIR APPLICATION IN THIS CASE. ........................................9

CONCLUSION ......................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bergenstock v. LegalZoom.com, Inc.*,
No. 13 CVS 15686, 2015 WL 3866703 (N.C. Super. Ct. June 23, 2015) ...............................4

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988) .........................................................................................................2

*Douglas v. U.S. Dist. Ct.*,
495 F.3d 1062 (9th Cir. 2007) .........................................................................................6

*Ekin v. Amazon Servs., LLC*,
84 F. Supp. 3d 1172 (W.D. Wash. 2014) .........................................................................6

*In re Cragar Indus., Inc.*,
706 F.2d 503 (5th Cir. 1983) ...........................................................................................2

*J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*,
863 F.2d 315 (4th Cir. 1988) ...........................................................................................9

*Levin v. Alms & Assocs., Inc.*,
634 F.3d 260 (4th Cir. 2011) ...........................................................................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (U.S. 1983) ....................................................................................................5

*Mundi v. Union Security Life Insurance Co.*,
555 F.3d 1042 (9th Cir. 2009) .........................................................................................8

*Rajagopalan v. NoteWorld, LLC*,
718 F.3d 844 (9th Cir. 2013) ...........................................................................................8

*Roach v. Navient Sols., Inc.*,
165 F. Supp. 3d 343 (D. Md. 2015) ............................................................................4, 5

*Sejman v. Warner-Lambert Co.*,
845 F.2d 66 (4th Cir. 1988) .............................................................................................3

*Selden v. Airbnb, Inc.*,
No. 16-CV-00933 (CRC), 2016 WL 6476934 (D.D.C. Nov. 1, 2016) ............................4

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
542 F.3d 354 (2d Cir. 2008) ............................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Washington Square Sec., Inc. v. Aune*,
    253 F. Supp. 2d 839 (W.D.N.C. 2003) ....................................................................................4, 5

**STATUTES**

Federal Arbitration Act, 9 U.S.C. §§ 1-14 .....................................................................................5

Nothing in Plaintiffs' Opposition rebuts Audible's showing that Plaintiff Taylor Fisse and Bryan Rees's claims should be compelled to arbitration. First, Plaintiffs' argument that the "law of the case" doctrine precludes arbitration is misguided, both legally and factually. The Central District of California transferred this case because it lacked jurisdiction over Plaintiffs' claims, and accordingly its orders as to other parties do not control. The facts in this case also differ significantly from what the California court considered on other arbitration motions. Indeed, applying those rulings to the facts here would require sending Plaintiffs' claims to arbitration.

Second, Plaintiffs' opposition fails to rebut the overwhelming evidence that Plaintiffs received reasonable notice of and repeatedly assented to arbitration provisions through multiple online agreements over the years. Plaintiffs suggest that the Court should apply a rigid test in analyzing notice and assent, but the cases they cite do not support that mechanical approach. On the contrary, the question of assent to online terms is simply whether, under all the circumstances, the customer received constructive or "inquiry" notice. Here, Fisse repeatedly received such notice and accepted both Audible and Amazon terms. Rees likewise repeatedly accepted Amazon's terms, which applied when he added his payment card to the Amazon account that Fisse used to purchase an Audible membership.

Plaintiffs also fail to rebut Audible's evidence that Rees's claims are so closely intertwined with Fisse's claims against Audible, and his own claims against Audible's parent company Amazon, that principles of equitable estoppel compel the Court to order his claims to binding arbitration as well. To hold otherwise would render both Fisse and Rees's repeated agreements to arbitrate meaningless, and thwart the strong federal policy in favor of arbitration.

Finally, Plaintiffs have failed to demonstrate that the arbitration provisions here are in any way unconscionable. Their reliance on Judge Wu's "corrective action" order is misplaced,

since, by its own language, that order does not apply to Fisse or Rees's repeated agreements to arbitrate. There is also nothing coercive about requiring customers to accept a company's current terms of service when they initiate new purchases and memberships. In addition, Plaintiffs have not shown any material differences between the arbitration provision here and those that many courts have enforced. Accordingly, Audible respectfully asks the Court to compel the case to arbitration and dismiss the Third Amended Complaint in its entirety.

**ARGUMENT**

**I. THE "LAW OF THE CASE" DOCTRINE DOES NOT APPLY AND IN ANY EVENT WOULD NOT SUPPORT PLAINTIFFS' POSITION.**

Plaintiffs misstate the "law of the case" doctrine. They also brush aside the important differences between the sign-up flows considered by the California court and those at issue here.

*First*, Plaintiffs fail to cite any cases that stand for the proposition that the decisions of a court that transfers a case for lack of jurisdiction govern motions as to different parties and based on different facts. On the contrary, the "age-old rule" states that "a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists . . . ." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988) (holding that Federal Circuit did not have to adopt Seventh Circuit's jurisdictional analysis as "law of the case" and, upon finding that it lacked jurisdiction, Federal Circuit could not reach the merits).

Cases that Plaintiffs cite to support their "law of the case" argument are inapposite as they concern a transferee court's ability to reconsider *transfer decisions*. For instance, *In re Cragar Indus., Inc.*, 706 F.2d 503, 505 (5th Cir. 1983), the court affirmed the general principle that, if a "motion to transfer is granted and the case is transferred to another district, the transferee-district should accept the ruling *on the transfer* as the law of the case . . . ." *Id*. at 505 (emphasis added; citations and quotations omitted). Under this reasoning, it would be improper

to seek reconsideration of whether personal jurisdiction exists in the California court. As to claims over which it had no jurisdiction, however, rulings by the Central District of California cannot be "law of the case." Moreover, the "law of the case" doctrine addresses when *appellate* decisions must be followed in subsequent proceedings, and "does not reach questions which might have been decided but were not." *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988) (internal citations and quotations omitted).

*Second*, the facts here are different. Plaintiffs falsely claim that Audible "barely mentions the prior orders" of the California court. Dkt. 138 ("Opp.") at 1. But Audible's opening brief provided a thorough history of that case, discussed Judge Wu's rulings in detail, and identified points of disagreement and key factual differences. *See, e.g.*, Dkt. 136 ("MPA") at 5, 11-12. A review of the California court's orders denying arbitration motions as to McKee and Weber shows why they do not apply to the materially different facts here. Contrary to Plaintiffs' assertion, the *McKee* court did not consider, much less rule on, several of the issues in this motion. Judge Wu did not consider any Audible direct paid membership sign-ups, where his concern about the use of the phrase "by completing your purchase" does not apply. *See* MPA 12-13 (describing April 14, 2017 paid membership sign-up). There was also no ruling as to any Audible desktop credit redemptions through the flow that Fisse used on April 14, 2017. *See id.* at 13-14 (describing April 14, 2017 credit redemptions). Nor was there any decision as to a membership sign-up through the Amazon mobile app. *See id.* at 15-16 (describing July 21, 2017 sign-up). The California court also decided critical issues of estoppel based on an interpretation of Ninth Circuit law, which, if accepted, would conflict with Fourth Circuit law.

Plaintiffs also brush aside the basis on which Judge Wu *granted* the arbitration motion as to Beals, and tentatively granted it as to Rogawski. Those rulings implicitly recognize that an

3

order denying arbitration as to one named plaintiff does not prevent granting a similar motion as to another. *See* Dkt. 53 (granting Beals motion to compel arbitration); Dkt. 97 at 18-20 (tentatively granting motion as to Rogawski). In fact, in granting the arbitration motion as to Beals, Judge Wu relied on a credit redemption disclosure that is highly similar to Fisse's April 14, 2017 credit redemption. *Compare* Dkt. 53 at 13-15 *and* Dkt. 42-6, *with* Dkt. 131-6. Thus, if a "law of the case" doctrine did apply here, it would require *granting* the motion, at least as to Fisse. That Plaintiffs lead with this argument merely underscores the weakness of their position.

## II. PLAINTIFFS FAIL TO OVERCOME EVIDENCE OF THEIR REPEATED AGREEMENTS TO ARBITRATE.

In discussing the standard for assent to online terms, Plaintiffs' opposition suggests a rigid test. Opp. 13-14 (listing supposed requirements). As Audible pointed out in its opening brief, however, the applicable standard is simply one of constructive or "inquiry" notice. *E.g.*, *Bergenstock v. LegalZoom.com, Inc.*, No. 13 CVS 15686, 2015 WL 3866703, at *5 (N.C. Super. Ct. June 23, 2015). Indeed, courts recognize that "the prevalence of online contracting in contemporary society lends general support to the Court's conclusion" that use of online services places users on notice those services' terms. *See Selden v. Airbnb, Inc.*, No. 16-CV-00933 (CRC), 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016).

Unable to overcome the proof of Fisse's assent, Plaintiffs quibble with the evidence, suggesting that Audible should have engaged in extensive discovery before seeking to compel arbitration. But Courts routinely compel arbitration without discovery. *See, e.g., Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 350 (D. Md. 2015) (declining to grant discovery where plaintiff merely supplied affidavit that she had "no knowledge" of a contract). After all, "there is no need to conduct any discovery, albeit limited, where it is clear that the instant dispute is, in fact, arbitrable." *Washington Square Sec., Inc. v. Aune*, 253 F. Supp. 2d 839, 845 (W.D.N.C.

2003), *aff'd*, 385 F.3d 432 (4th Cir. 2004). Tellingly, Fisse does not dispute the facts about her extensive use of Audible, such as the dates of sign-ups and purchases or details of her customer service interactions. Moreover, requiring expensive and time-consuming discovery would undermine "Congress's clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

Plaintiffs also ignore that Audible and Amazon identified multiple witnesses and undertook an extensive investigation of their records, delivering seven declarations that provided a robust evidentiary foundation. Plaintiffs seek to marginalize all this, characterizing the testimony as "allegations." *See* Opp. 14 & n.4. Sworn testimony is more than mere allegations, particularly when those testifying are in a position to know the facts. *See Roach*, 165 F. Supp. 3d 343, 350 (D. Md. 2015) (finding "no genuine dispute of material fact concerning arbitrability" where defendant "proffered an affidavit attesting to a contractual relationship with Plaintiff, along with substantial documentation in evidence of this relationship"). Plaintiffs offer no basis to reject testimony by knowledgeable employees and in reliance on internal records.[1]

Here, the undisputed evidence confirms that Plaintiff Fisse repeatedly agreed to the Audible Conditions of Use (COU)—both by signing up for Audible memberships and by making audiobook purchases through screens that contained hyperlinked terms acceptance disclosures. *See* MPA 8-16. Collectively and individually, these flows created assent to Audible COU under any objective reasonableness standard, and Plaintiffs' nitpicking does

---

[1] Nor did Audible "concede" anything by not putting in evidence from 2013-2014. *See* Opp. 15. Going back more than four years before this lawsuit, and outside any applicable statute of limitations, is wholly unnecessary here, where the evidence of more recent transactions amply demonstrates assent, and Plaintiffs' claimed harm arises from a recent membership.

nothing to change this.  For instance, the opposition criticizes Audible for relying on sign-up flows that use "By completing your purchase" language, suggesting that Judge Wu's prior rulings foreclose this argument.  *See* Opp. 16-17, 20-21.  Audible's opening brief explained its disagreement with Judge Wu's reasoning.  *See* MPA 11-12.  But more importantly, Plaintiffs cannot get around the fact that Fisse's sign-up on April 14, 2017 was for a direct paid membership, not a free trial.  *See* MPA 12-13.  Nor can Plaintiffs' sidestep Audible's evidence that Fisse redeemed credits through using a "Confirm Purchase" button in close proximity to a prominent hyperlinked disclosure with terms acceptance language.  *See* Dkt. 131 ¶¶ 6-7, Exs. E-F.  Significantly, this screen was much like the one on the Amazon desktop that Judge Wu found created assent as to Beals in the *McKee* action.  *Cf.* Dkt. 42-6.

Unable to refute this last point, Plaintiffs instead submit misleading evidence.  *See* Opp. 19 (citing Dkt. 44-4).  The screenshot Plaintiffs submit is *not* the final screen where a member confirms a purchase; it is a screen Audible presents *earlier* in the flow, when a member selects whether to pay with cash or credits.  *See* Reply Declaration of Kausik Basu ¶ 3.  The actual "confirm purchase" page showed the relevant hyperlinked disclosures.  *Id*.  Audible uses a similar screen on its desktop website today, and this would have been obvious to anyone completing a purchase through the flow that Plaintiffs' counsel discusses in his declaration.  *Id.*

Nor is there any merit to Plaintiffs' argument that they never accepted *Amazon's* arbitration agreement because they made some purchases before Amazon adopted an arbitration provision.  *See* Opp. 24-25 (relying on *Douglas v. U.S. Dist. Ct.*, 495 F.3d 1062, 1065 (9th Cir. 2007)).  Plaintiffs have repeatedly attempted to raise this argument in the California action, and the court there has rejected it.  *See, e.g.*, Dkt. 37 at 17 & n.7.  The court in *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1177 (W.D. Wash. 2014), also rejected a similar argument, observing

6

that even where customers had made purchases before 2011, Amazon's terms containing the arbitration agreement "were presented to and agreed to by [customers] each and every time they made a purchase after August 2011." At all relevant times, the Amazon COU have also explicitly reserved Amazon's right to make changes to its site, policies, and terms. *See* Dkt. 138-2 at 8-9, 138-3 at 4; *see also* Dkt. 133, Exs. A-L. Moreover, since August 2011, the Amazon COU have featured a "last updated" notice in large font at the very top of the document. *See* Dkt. 133, Exs. A-L. This evidence further supports the conclusion that, by placing new orders on Amazon, Plaintiffs agreed to the Amazon terms in place at that date.[2]

In short, Audible's extensive evidence satisfies its burden of showing Plaintiffs' arbitration agreements with Audible and Amazon.

### III. BOTH THE PLAIN LANGUAGE OF PLAINTIFFS' AGREEMENTS AND EQUITABLE ESTOPPEL PRINCIPLES REQUIRE ARBITRATION.

Since arbitration agreements exist as to both Plaintiffs, the analysis turns to the scope of the agreements. Plaintiffs do not dispute that the arbitration clauses are broad, encompassing "any dispute or claim relating in any way" to Amazon and Audible services. Nor do Plaintiffs dispute that Fisse's claims fall within the scope of the Audible agreement. The evidence is also clear that Plaintiffs' claims fall within the agreements with Amazon, since (1) they "relate to" Plaintiffs' use of Amazon to add a payment card and sign up for Audible, and (2) the Amazon COU defines Amazon as including its "affiliates," rendering Audible a third party beneficiary.

Plaintiffs also fail to rebut Audible's showing that equitable estoppel principles require

---

[2] Plaintiffs rely heavily on the Second Circuit's opinion in *Nicosia* throughout their opposition, but then they urge this Court to disregard later developments in that case. *See* Dkt. 139 (objections to *Nicosia* report). The reasoning of the *Nicosia* report, not its precedential weight, is what matters: a plaintiff who makes repeated purchases using screens that link to updated service terms assents to those terms under an objective standard.

7

Case 5:18-cv-00211-D   Document 140   Filed 08/10/18   Page 11 of 16

compelling this case to arbitration, and their reliance on Judge Wu's ruling on the issue (Dkt. 37 at 22-23) is misplaced.  The California court based that decision on its interpretation of two Ninth Circuit cases, *Mundi v. Union Sec. Life Ins. Co.,* 555 F.3d 1042 (9th Cir. 2009) and *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844 (9th Cir. 2013).  But in those cases, there was no close relationship between the party asserting the arbitration agreement and the business that executed it.  *See Mundi*, 555 F.3d at 1046 (non-signatory insurance company could not compel arbitration based on loan agreement between decedent and bank); *Rajagopalan*, 718 F.3d at 847 (non-signatory payment processor could not compel arbitration based on agreement between plaintiff and debt-settlement program).  In addition, unlike this case, the disputes there had no relation to the contracts that included the arbitration agreements.

While *Mundi* and *Rajagopalan* declined to extend equitable estoppel to allow enforcement of arbitration agreements in those particular cases, they expressly noted that, in other circumstances, other circuits had compelled arbitration under equitable estoppel principles.  For instance, *Mundi* contrasted a Second Circuit decision that outlined cases where a non-signatory could enforce an arbitration agreement: the subject matter of the dispute was intertwined with the contract providing for arbitration, and there was "a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement."  *Mundi*, 555 F.3d at 1046 (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc*., 542 F.3d 354, 359, 361 (2d Cir. 2008)).

In view of the exceptions the Second Circuit outlined, which the Ninth Circuit noted favorably, Audible respectfully submits that the California court considered the issue of equitable estoppel too narrowly.  And in all events, the Fourth Circuit has expressly held that

8
Case 5:18-cv-00211-D   Document 140   Filed 08/10/18   Page 12 of 16

non-signatories may invoke an arbitration clause with respect to a signatory where the claims are "intertwined." *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21 (4th Cir. 1988). "When the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement . . . . The same result has been reached under a theory of equitable estoppel." *Id*.

Plaintiffs' opposition fails to rebut the evidence that the parties, their claims, and the agreements at issue are inherently inseparable: (1) Audible is a wholly owned Amazon subsidiary, promotes itself as an "Amazon company," and is closely integrated with Amazon; (2) customers must use their Amazon accounts to sign up for Audible, and Fisse did so using an Amazon app; (3) Fisse and Rees are in a close domestic relationship, which led to Rees adding his payment information to her account; and (4) the subject matter of this dispute is intertwined with the Amazon terms, which require Amazon account holders to accept responsibility for activities and charges on their accounts. *See, e.g.*, Dkt. 131 ¶¶ 3, 5-6, Ex. B ("powered by Amazon services"), Ex. D ("We're an Amazon company"), Ex. E (logo reading "Audible – an Amazon company"); Dkt. 131, Ex. F (defining "Amazon Services LLC and/or its affiliates" as "Amazon" under the agreement). There is simply no coherent way to separate out the parties, their agreements, and the claims in this case. Accordingly, equitable estoppel principles require enforcing Amazon and Audible's arbitration agreements as to both Plaintiffs' claims.

## IV. THERE IS NOTHING UNCONSCIONABLE ABOUT THE ARBITRATION AGREEMENTS OR THEIR APPLICATION IN THIS CASE.

Plaintiffs fail to address the substance of Audible's enforceability argument. *Compare* MPA 26-30, *with* Opp. 29-30. Their claim that retroactivity makes the arbitration agreement unconscionable ignores the fact that arbitration agreements, like other contracts, can have

retroactive effect. *See Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 267 (4th Cir. 2011). Courts enforcing the substantially identical Amazon arbitration agreement have found that it applies retroactively. *See* MPA 21-22 (collecting cases). Customers who do not wish to be bound by the arbitration provisions can choose not to purchase products and services on Amazon, but each time a customer does so, she agrees to arbitrate all disputes, regardless of when they arose.

Plaintiffs also incorrectly rely on the California court's "corrective action" order to suggest the agreement to arbitrate is unconscionable because Fisse was a "putative class member" when she signed up for Audible in July 2017. That argument ignores the California court's ruling that it lacked jurisdiction over her claims. Moreover, the California court rejected Plaintiffs' attempt to restrict Audible's right to enter into arbitration agreements during new member sign-ups. That's why the corrective action order applies only to "[a]ny agreement to arbitrate entered into by a *then current Audible member* on or after July 17, 2017." Dkt. 124-1 ¶ 1 (emphasis added). It further provides that "[t]his order does not affect persons who were not Audible customers prior to July 17, 2017 or persons who agreed to Audible's arbitration clause prior to July 17, 2017." *Id.* ¶ 6 (emphasis added). Here, Fisse had not only agreed to Audible's arbitration clause repeatedly *before* July 17, 2017, but she had cancelled her membership and was *not* a "then current Audible member" when she signed up on July 21, 2017. Moreover, Fisse and Rees's claims relating to Rees's credit card were not part of the California case then, because the claims they now raise about "unauthorized" payment cards were not properly asserted by any plaintiff with standing. *See* Dkt. 53 at 10 (dismissing McKee's claims for lack of standing). For this reason, as well, Plaintiff's unconscionability argument does not withstand scrutiny.

## CONCLUSION

Audible respectfully requests that the court grant its motion to compel arbitration.

10

Case 5:18-cv-00211-D   Document 140   Filed 08/10/18   Page 14 of 16

Dated: August 10, 2018 Respectfully submitted,

/s/ Jedediah Wakefield
Jedediah Wakefield (CSB No. 178058)
Email: jwakefield@fenwick.com
Armen N. Nercessian (CSB No. 284906)
Email: anercessian@fenwick.com
Matthew B. Becker (CSB No. 291865)
Email: mbecker@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

Attorneys for Defendant AUDIBLE, INC.

/s/ Stephen D. Feldman
Stephen D. Feldman (NCSB # 34940)
ELLIS & WINTERS LLP
Email: stephen.feldman@elliswinters.com
4131 Parklake Avenue, Suite 400
Raleigh, NC 27612
Telephone: 919.865.7005
Facsimile: 919.865.7010

Attorney for Defendant AUDIBLE, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on August 10, 2018.

   /s/ Jedediah Wakefield
Jedediah Wakefield (CSB No. 178058)
Email: jwakefield@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

   /s/Stephen D. Feldman
Stephen D. Feldman (NCSB # 34940)
ELLIS & WINTERS LLP
Email: stephen.feldman@elliswinters.com
4131 Parklake Avenue, Suite 400
Raleigh, NC 27612
Telephone: (919) 865-7005
Facsimile: (919) 865-7010